In re HUSE.

(Circuit Court of Appeals, Ninth Circuit. February 23, 1897.)

No. 338.

1. HABEAS CORPUS—FEDERAL COURTS—CONFINEMENT OF INSANE PERSONS.

It is within the province of the state legislatures to determine the method of procedure for procuring the confinement of insane persons, and, if the steps provided have not been followed, the redress of persons improperly confined is by application to the state courts. The federal courts ought not, except in extreme cases, if at all, to interfere with the administration of such state laws by the issue of the writ of habeas corpus on the ground that an alleged insane person is restrained of his liberty in violation of the constitution of the United States.

2. SAME—PERSONS CONFINED UNDER STATE AUTHORITY.

It is only in exceptional and urgent cases that the federal courts will interpose by the writ of habeas corpus to discharge prisoners held in custody under state authority.

The petition of Charles E. Huse for the issuance of a writ of habeas corpus avers:

That "he is unlawfully and forcibly imprisoned, and against his will detained, restrained of his liberty and lawful rights, * * * in the Southern California State Insane Asylum for the Insane and Inebriates, at Highland, county of San Bernardino, state of California." That the facts upon which this charge is made are set forth upon information and belief, and are substantially as follows: On November 21, 1885, at Santa Barbara, Cal., the petitioner was "forcibly, maliciously, and unlawfully arrested without a warrant of arrest, * * * on malicious and false pretenses, such as that your petitioner was dangerously insane, and dangerous to life and property." That it was "willfully, falsely, maliciously, collusively, and unlawfully, as this petitioner believes, pretended that this affiant was insane in such a high grade of madness of insanity that, * * * if allowed to remain unarrested and free, he would be in danger of destroying his own life or property, or the lives or property of others." That

his arrest "was procured by collusion of one D. P. Hatch, then the only judge of the superior court of the county of Santa Barbara, state of California, secretly associated with persons combined for the purposes of maligning with guile, out of envy for fame's sake, and avarice, your petitioner, and to deprive him of his lawful rights." That he was never examined "by any physicians authorized by the provisions of section 2214 of the Political Code, nor at all." That he was not examined before any magistrate of a court of record in any place, nor at any time, nor at all, in pursuance of the law of the land. That he was in February, 1886, discharged from the Napa Asylum. That on March 23, 1887, he was again unlawfully arrested, without any warrant of arrest, and reimprisoned in the Napa Asylum, contrary to law. That he was not examined by any physician, as provided by law. That in 1894 he was transferred to the Southern California State Insane Asylum for the Insane and Inebriates, at Highland, county of San Bernardino, without lawful authority. "That his civil rights have been unlawfully denied to him." That no legal complaint was made to authorize the warrant of arrest. That he "has been and is deprived of his lawful and constitutional rights * * * by said state of California." That his examination was in open violation of both the federal and state constitutions, as well as the laws. "That he cannot enforce his lawful rights in the courts of the state of California after due efforts." That the document in possession of the medical director of the Highland Asylum, by virtue of which the petitioner is held, "is a forgery and counterfeited, in pursuance of the said collusion, in order to prevent this affiant to retrieve his liberty."

F. F. Gallardo, for the petitioner.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge (after stating the facts as above). The facts set forth in the petition are not of such a character as to authorize this court to issue the writ.   It is within the province of the state legislature to determine the method of procedure that should be followed in procuring the confinement of persons who have become insane to such an extent as to render them dangerous to the community, or to themselves, to be at large.   If the steps provided for by the statute of the state have not been followed, the redress of persons who have been improperly confined without warrant or authority of law is by application to the courts of the state.   The federal courts ought not, except in extreme cases, if at all, be called upon to interfere.   Nearly all the averments in the petition are merely conclusions of law, and the petition might properly be denied because it does not state any facts which would authorize the issuance of the writ.   It was never intended by congress that the courts of the United States should, by writs of habeas corpus, obstruct the ordinary administration of the criminal laws, or laws relating to the confinement of insane persons, through its own tribunals.   In Ex parte Royall, 117 U. S. 241, 251, 6 Sup. Ct. 734, 740, the court, in considering the character of cases that would justify the courts of the United States by virtue of writs of habeas corpus to wrest the petitioner from the custody of the state officers, said:

"We are of opinion that, while the circuit court has the power to do so, and may discharge the accused in advance of his trial, if he is restrained of his liberty in violation of the national constitution, it is not bound in every case to exercise such a power immediately upon application being made for the writ. We cannot suppose that congress intended to compel those courts, by such means, to draw to themselves, in the first instance, the control of all criminal

prosecutions commenced in state courts exercising authority within the same territorial limits, where the accused claims that he is held in custody in violation of the constitution of the United States. The injunction to hear the case summarily, and thereupon to dispose of the party as law and justice require, does not deprive the court of discretion as to the time and mode in which it will exert the powers conferred upon it. That discretion should be exercised in the light of the relations existing, under our system of government, between the judicial tribunals of the Union and of the states; and in recognition of the fact that the public good requires that those relations be not disturbed by unnecessary conflict between courts equally bound to guard and protect rights secured by the constitution."

The principles as thus announced have been followed by the supreme court in a great number of cases. Ex parte Fonda, 117 U. S. 516, 6 Sup. Ct. 848; In re Duncan, 139 U. S. 449, 11 Sup. Ct. 573; In re Wood, 140 U. S. 278, 11 Sup. Ct. 738; In re Jugiro, 140 U. S. 291, 11 Sup. Ct. 770; Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. 40; In re Frederich, 149 U. S. 70, 13 Sup. Ct. 793; New York v. Eno, 155 U. S. 89, 15 Sup. Ct. 30; Pepke v. Cronan, 155 U. S. 100, 15 Sup. Ct. 34; Bergemann v. Backer, 157 U. S. 655, 15 Sup. Ct. 727; Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297. In the case last cited the court reviewed at length many of the authorities upon this subject, and it was there held that, as a general rule, the United States courts should not assume in advance that the petitioner could not obtain all the protection to which he might be entitled in the state courts. In that case the petitioner, a citizen of Massachusetts, was arrested and extradited from the state of Massachusetts upon a warrant issued by the governor of that state on application of the governor of Connecticut, upon the ground that the petitioner had been indicted for murder in the state of Connecticut; and the petition, among other things, alleged that no indictment was ever found against him by any grand jury sitting at any time within the state of Connecticut, and that the pretended indictment was found by mistake or misconception of the grand jury, and was not their true finding, and that petitioner was not, at the time of his extradition from Massachusetts, a fugitive from justice from the state of Connecticut. The court, in passing upon these questions, said:

"Such matters are proper subjects of inquiry in the courts of the state, but afford no ground for interposition by the courts of the United States by writ of habeas corpus. In re Wood, 140 U. S. 278, 11 Sup. Ct. 738; In re Wilson, 140 U. S. 575, 11 Sup. Ct. 870. * * * A warrant of extradition of the governor of a state, issued upon the requisition of the governor of another state, accompanied by a copy of an indictment, is prima facie evidence, at least, that the accused had been indicted, and was a fugitive from justice, and, when the court in which the indictment was found has jurisdiction of the offense (which there is nothing in this case to impugn), is sufficient to make it the duty of the courts of the United States to decline interposition by writ of habeas corpus, and to leave the question of the lawfulness of the detention of the prisoner in the state in which he was indicted, to be inquired into and determined, in the first instance, by the courts of the state, which are empowered and obliged, equally with the courts of the United States, to recognize and uphold the supremacy of the constitution and laws of the United States. Robb v. Connolly, 111 U. S. 624, 4 Sup. Ct. 544; Ex parte Reggel, 114 U. S. 642, 5 Sup. Ct. 1148; Roberts v. Reilly, 116 U. S. 80, 6 Sup. Ct. 291; Cook v. Hart, 146 U. S. 183, 13 Sup. Ct. 40; Pearce v. Texas, 155 U. S. 311, 15 Sup. Ct. 116."

In the present case only questions of fact are presented: (1) Whether the petitioner was examined by physicians, as required by law; (2)

whether the commitment, by virtue of which the petitioner is held, regular upon its face, is a forgery, and was procured by fraud and collusion; (3) whether petitioner is now sane, and for that reason entitled to his discharge. The determination of these questions is exclusively within the jurisdiction of the state courts. A brief reference to some of the exceptional and urgent cases where the courts of the United States have interposed by writs of habeas corpus and discharged prisoners who were held in custody under the state authority will clearly show that this case does not fall within the exceptional class. In Re Loney, 134 U. S. 372, 10 Sup. Ct. 584, a person arrested by order of a magistrate of the state, for perjury in testimony given in the case of a contested congressional election, was discharged on habeas corpus because a charge of such perjury was within the exclusive cognizance of the courts of the United States, and to permit it to be prosecuted in the state courts would greatly impede and embarrass the administration of justice in the national tribunals. In Re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, a deputy marshal of the United States, charged, under the constitution and laws of the United States, with the duty of guarding and protecting a judge of a court of the United States, was discharged on habeas corpus by the circuit court on the charge of homicide for the reason that the offense was committed in the performance of those duties. And in Ex parte Royall and New York v. Eno, supra, it was recognized that in cases of urgency, such as those of prisoners in custody by authority of a state for any act done, or omitted to be done, in pursuance of a law of the United States, or other process of the courts of the United States, or otherwise, involving the authority and operations of the general government, or its relations with foreign nations, the courts of the United States could interpose by writ of habeas corpus. The distinction between such cases and the one under consideration is too clear to require any further discussion. Writ denied.