SHAPLEY v. COHOON.

(District Court, D. Massachusetts. October 8, 1918.)

No. 1642.

1. HABEAS CORPUS ⊜⇒54—SUFFICIENCY OF PETITION—GENERAL ALLEGATIONS.
   In a petition for a writ of habeas corpus for release of petitioner from confinement as an insane person, a general allegation that the commitment is void, without the allegation of facts to support it, is insufficient.

2. STATES ⊜⇒4—COMMITMENT OF INSANE PERSONS—POWERS.
   The state alone is charged with the duty of caring for the insane within its borders, and may adopt whatever method of procedure it may desire for inquisition into their condition and the necessity for their confinement, provided the same is not in contravention of the Constitution of the United States.

3. HABEAS CORPUS ⊜⇒45(2)—FEDERAL COURTS—DISCRETION IN EXERCISE OF JURISDICTION—PERSONS CONFINED BY STATE AUTHORITY.
   To guard against unnecessary conflicts between the federal and state courts, both of which are equally bound to guard and protect rights secured by the Constitution, it is necessary that one who alleges that he has been deprived of his liberty in violation of his constitutional rights by state authorities should have exhausted all his remedies in the state courts before a federal court will exercise its jurisdiction in habeas corpus proceedings.

Habeas Corpus. Petition of Sarah Chandler Shapley against Elisha Cohoon. Writ denied.

See, also, 258 Fed. 757.

James A. Keown, of Lynn, Mass., for petitioner.
J. R. Benton, Asst. Atty. Gen., for Elisha Cohoon.
Max L. Levenson, of Boston, Mass., for defendant.

⊜⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

JOHNSON, Circuit Judge. Upon the entry of the petition in this case a rule was issued that the respondent show cause why a writ of habeas corpus should not be issued as prayed for. The respondent has filed a return, in which it is stated that the petitioner was under date of October 21, 1915, adjudged to be an insane person and duly committed to the Westborough State Hospital by a justice of the police court of Newton, in the county of Middlesex, as an insane person, two physicians having certified that the said Sarah Chandler Shapley was in their opinion insane and a proper subject for treatment and custody in the hospital for the insane as an insane person under the provisions of law; that the said Sarah Chandler Shapley was transferred from the Westborough State Hospital to the Medfield State Hospital on or about March 7, 1918. Copies of the medical certificate, commitment, and order of transfer are annexed to the return.

The petition contains many irrelevant allegations relating to the petitioner's financial affairs and the litigation in which she has been engaged in the state of Massachusetts, and in it an attempt is made to raise the federal question whether she was committed and is now deprived of her liberty in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States.

[1] While the petitioner states that the sole and only authority by virtue of which the respondent restrains and detains her "is a certain paper which purports to be a commitment in writing to the Westboro State Hospital for the Insane in the commonwealth of Massachusetts, but which the petitioner on information and belief alleges is wholly void and to no effect," the petition contains no allegation of any defects which would render the order of commitment void and it has been repeatedly held that a general allegation is insufficient. Whitten v. Tomlinson, 160 U. S. 231, 16 Sup. Ct. 297, 40 L. Ed. 406; King v. McLean Asylum, 64 Fed. 325, 12 C. C. A. 139, 26 L. R. A. 784; Ex parte Cuddy, 131 U. S. 280, 9 Sup. Ct. 703, 33 L. Ed. 154.

In another part of the petition she alleges "on information and belief, on October 21, 1915, with force of arms John C. Kennedy, judge of the Newton police court, with two officers and two doctors," broke into her home in said Newton without permission and without knowledge on her part, assaulted, threatened, and indecently treated her, searched her home, and removed and carried away her papers, without even color of authority, denied her the right of consulting her friends and attorney, and ordered her to dress hurriedly and in the presence of the police officers, hurried her into an automobile and carried her to the Westborough State Hospital, and there permanently confined her as an insane person," which the petitioner alleges was in violation of articles 5, 6, and 14 of the amendments of the national Constitution. The order of commitment was signed by John C. Kennedy, judge of the Newton police court, and in it the provisions of the statutes of Massachusetts relative to the commitment of insane persons to an insane asylum appear to have been fully complied with. It states that, after a full hearing of the premises and a personal examination of the person alleged to be insane, the judge who signed the order found the

petitioner to be insane and a proper subject for treatment and custody in the state hospital at Westborough, and that he had before him the certificate, under oath, of two physicians who had made a personal examination of the petitioner and had certified her to be insane and a dangerous person to be at large, and he certifies that he had also seen and personally examined her. If the officer to whom the execution of the order of commitment was intrusted exceeded his authority, or if those who accompanied him for the purpose of assisting in the execution of the order were guilty of any unauthorized acts of violence toward the petitioner, she has her remedy. That is not a proper subject of inquiry under this petition.

There is also annexed to the petition an order of the Supreme Judicial Court of Massachusetts, dated April 6, 1917, upon the petition of the said Sarah Chandler Shapley, for a writ of habeas corpus directing "that the said Sarah Chandler Shapley be given into the custody of her sister, Marie L. Ellis, of Old Orchard, in the state of Maine, under the condition that she immediately depart from the commonwealth of Massachusetts and go with her said sister, Marie L. Ellis, to said Old Orchard, Me., and there remain in the custody of said Marie L. Ellis until the further order of the court; and it is further ordered that, should the said Sarah Chandler Shapley return to said commonwealth of Massachusetts without the permission or further order of said court, she is to be taken into custody and remanded to the custody of the superintendent of the Westboro State Hospital."

There is also annexed to the petition a copy of a petition to the Supreme Judicial Court of Massachusetts by Henry C. Atwill, Attorney General of Massachusetts, in which the previous order of the court is cited and information given that the said Sarah Chandler Shapley had returned to Massachusetts in violation of the said order, and was then residing in the city of Newton, and asking that she be ordered to appear before the court and show cause why she was not in contempt and should not be remanded to the custody of the superintendent of the Westborough State Hospital.

Upon this petition of the Attorney General the said Sarah Chandler Shapley was ordered on December 20, 1917, to appear before the justices of the Supreme Judicial Court at Boston, within and for the county of Suffolk, on Friday, the 28th day of December, 1917, at 9:30 o'clock a. m., "by serving her with an attested copy of said petition and of this order thereon, forthwith, that she may then and there show cause why she is not in contempt and she be not remanded to the custody of the superintendent of the Westborough State Hospital."

Also annexed to the petition was the final order by a justice of the Supreme Judicial Court, made on January 11, 1918, which was as follows:

"Final Order.

"This case came on to be further heard at this sitting, and thereupon, upon consideration thereof, it is ordered that the order entered April 6, 1917, be and the same is hereby revoked, that the petition for writ of habeas corpus be dismissed, and that the said Sarah Chandler Shapley be remanded to the custody of H. O. Spaulding, superintendent of the State Hospital for the Insane at Westborough, in the county of Worcester, in said commonwealth."

It thus appears that there was a hearing before a judge of the Supreme Judicial Court of Massachusetts upon her mental condition, and that he decided that it was such as to require him to remand her to the insane asylum.

The finding of the judge of the Supreme Judicial Court of Massachusetts upon the question of her insanity is conclusive, and is not subject to review. The only question presented is whether she is now deprived of her liberty without due process of law.

[2] This court has undoubted jurisdiction upon a writ of habeas corpus to discharge from the custody of state officers one restrained of his liberty in violation of the Constitution of the United States, but has discretion as to the time and mode in which this power shall be exercised. The Supreme Court of the United States in numerous decisions has defined the limits within which this discretion must be confined. The latest of these is Urquhart v. Brown, 205 U. S. 179, 27 Sup. Ct. 459, 51 L. Ed. 760, in which in a footnote at page 182 of 205 U. S. (27 Sup. Ct. 459, 51 L. Ed. 760), the previous decisions are collected. While these decisions dealt with criminal prosecutions commenced in state courts, wherein the accused claimed that he was held in custody in violation of the Constitution of the United States, they apply equally to one who, it is alleged, is deprived of his liberty in violation of the Constitution by being confined within a state hospital for the insane by the administration of its laws. The state alone, as parens patriæ is charged with the duty of caring for the insane within its borders, and may adopt whatever method of procedure it may desire for inquisition into their condition and the necessity for their confinement, provided the same is not in contravention of the Constitution or laws of the United States. In Re Dowdell, 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290, the Supreme Judicial Court of Massachusetts has sustained the constitutionality of its law for the commitment of insane persons, and in view of the confusion that might arise from a contrary decision by a federal court, while I think the Massachusetts statute ought to provide for notice and an opportunity to be heard before commitment of the insane is ordered, I think it would be unwise for a federal court now to advance any different view.

[3] For the welfare of the community, as well as that of the insane, and to guard against unnecessary conflicts between the federal courts and those of the state, both of which are equally bound to guard and protect rights secured by the Constitution, it is necessary that one who alleges that he has been deprived of his liberty in violation of his constitutional rights should have exhausted all his remedies in the state court before application should be made to a federal court. The exceptional cases in which a federal judge should exercise the power conferred upon him to issue a writ of habeas corpus to release one who is in custody by state authority and claims that he is deprived of liberty in violation of the Constitution are stated in Ex parte Royall, 117 U. S. 241, 251, 6 Sup. Ct. 734, 740, 29 L. Ed. 868, as follows:

"When the petitioner is in custody by state authority for an act done or omitted to be done in pursuance of a law of the United States, or of an order, process, or decree of a court or judge thereof, or where, being a subject or

citizen of a foreign state, and domiciled therein, he is in custody, under like authority, for an act done or omitted under any alleged right, title, authority, privilege, protection, or exemption claimed under the commission, or order, or sanction of any foreign state, or under color thereof, the validity and effect whereof depend upon the law of nations, in such and like cases of urgency, involving the authority and operations of the general government, or the obligations of this country to, or its relations with, foreign nations, the courts of the United States have frequently interposed by writs of habeas corpus and discharged prisoners who were held in custody under state authority. So, also, when they are in the custody of a state officer, it may be necessary, by use of the writ, to bring them into a court of the United States to testify as witnesses."

It is evident that the case presented by the petitioner does not fall within any of these enumerated. classes. While the petitioner has presented a petition to the Supreme Judicial Court for a writ of habeas corpus, which was denied by a single justice of that court, it does not appear that upon the hearing any question of law was reserved or reported to the full court, as might have been done. King's Case, 161 Mass. 46, 36 N. E. 685. If this had been done, and the highest court of the state, competent under the state law to dispose of the matter, had finally acted, the case could have been brought to the Supreme Court of the United States upon a writ of error. Ex parte Coatz (D. C.) 242 Fed. 1003.

Although a single justice of the Supreme Judicial Court of Massachusetts has denied a writ of habeas corpus, this would not constitute res adjudicata. Bradley v. Beetle, 153 Mass. 154, 26 N. E. 429. Under chapter 504, section 78, of the Acts of 1909 of Massachusetts, it would seem as if she, or any person in her behalf, could now make application to a justice of the Supreme Judicial Court of that state, alleging that she ought not longer to be confined; and section 79 of the same chapter points out the duty of the justice, upon reasonable cause shown for hearing, to order notice of the time and place of hearing to be given, as he may determine, and further provides that the alleged insane person may be brought before the justice at the hearing upon a writ of habeas corpus if any person so requests and the justice considers it proper; also that an issue or issues may be framed and submitted to a jury by direction of the justice or on the request of any person who appears in the case.

In the opinion in Re Huse, 79 Fed. 305, 25 C. C. A. 1 (C. C. A. 9th Circuit), the reasons why the courts of the United States should not obstruct the administration of laws relating to confinement of insane persons through its own tribunals are forcibly stated, and with them I fully agree.

Petition dismissed, and writ denied.