**UNITED STATES ex rel. GROVE v. JACKSON.**

No. 88.

District Court, M. D. Pennsylvania.

Sept. 12, 1936.

Miller A. Johnson, of Lewisburg, Pa., for relator.

Harry M. Showalter, of Lewisburg, Pa., for respondent.

WATSON, District Judge.

The relator, Merrill A. Grove, filed in this court his petition for a writ of habeas corpus, alleging his illegal confinement at a state hospital for the insane, located at Danville, Pa., and belonging to the commonwealth of Pennsylvania. The material allegations of his petition are:

"That no ground of detention is alleged, to the knowledge of your petitioner, unless it be a certain order for commitment made by the Court of Quarter Sessions of Union County, Pennsylvania, on the thirty-first day of March, A. D., 1936."

"That the said commission did not notify your petitioner or his counsel of any hearing, as required by the Act of Assembly of Pennsylvania and the Constitution of the United States of America; that your petitioner was not permitted to subpoena any witnesses, as required by the Act of Assembly under which this proceeding was instituted."

Upon writ issued, a response was made at the time of hearing, wherein, inter alia, it was alleged: "That M. A. Grove was committed to the State Hospital for the Insane, at Danville, as provided by the Mental Health Act of Pennsylvania of 1923, P.L. 998, Section 308." There were also introduced in evidence the records in the case of Commonwealth v. Merrill A. Grove, a prisoner alleged to be mentally ill, to No. 2 May term 1936, of the court of quarter sessions of Union county, Pennsylvania.

The Mental Health Act of Pennsylvania of July 11, 1923, P.L. 998, article 3, § 308 (50 P.S.Pa. § 48), provides as follows: "When any person detained in any prison, whether waiting trial or undergoing sentence, or detained for any other reason (e. g. as a witness), shall, in the opinion of the superintendent, jail physician, warden, or other chief executive officer of the institution or other responsible person, be insane, or in such condition as to make it necessary that he be cared for in a hospital for mental diseases, the said superintendent, jail physician, warden, or other chief responsible officer of the institution, or other person, shall immediately make application, upon a form prescribed by the department, to a law judge of the court having jurisdiction of the charge against said person, or under whose order he is detained, for commitment of said person to a proper hospital for mental diseases. The said judge shall forthwith order an inquiry by two qualified physicians, or by a commission as provided in section three hundred and four of this act, who shall immediately examine the said person and make written report of their findings to the said judge. If, in their opinion, the person so detained is insane, the physicians shall so state in a certificate conforming to the requirements of section three hundred and two, or the commission in a report conforming to the requirements of section three hundred and four of this act. They shall also report whether, in their opinion, such person is of criminal tendency. The said judge may, in his discretion, summon other witnesses and secure further evidence. If he is then satisfied that the person thought or alleged to be insane is in fact insane, he shall order the removal of such person to a hospital for mental diseases. If the prisoner is a convict serving sentence, or if he is of criminal tendency, he shall be removed to a state hospital for insane criminals. In any other case, the judge shall commit him to some other hospital for mental diseases."

And in article 3, § 317, of the same act (50 P.S.Pa. § 57), it is provided: "All commitments under this act shall be revisable under writ of habeas corpus, which may be sued out, at any time, by any person restrained hereby, or by any one acting for or on behalf of such person: Provided, That superintendents and other officers of institutions are not to be held personally liable for the detention of patients when such patients are received, placed, and detained in such institutions in compliance with the provisions of this act."

And in article 6, § 601 (50 P.S.Pa. § 171 (a, f), it is provided:

"Every mental patient in any institution or place for mental patients, within the jurisdiction of the department, shall have the right—

"(a) To communicate with his counsel and with the commissioner, and to be alone at any interview with his counsel or commissioners or representative of the department; * * *

"(f) To a writ of habeas corpus to determine whether or not he is properly detained as a mental patient, and the respondent in any such writ shall be required

to pay the costs and charges of the proceedings unless the judge shall certify that, in his opinion, there were sufficient grounds for detaining the patient and putting him to his writ."

The record in the court of quarter sessions of Union county, Pa., shows a petition on a form furnished by the Department of Welfare of the Commonwealth of Pennsylvania for use under section 308 of the Mental Health Act of Pennsylvania, executed by the sheriff of Union county, who alleged in substance that Merrill A. Grove was then a prisoner in Union county jail, and that he (the sheriff) believed Merrill A. Grove to be insane, and he prayed the court to order an inquiry into the prisoner's condition, either by two qualified physicians or by a commission. This was in accordance with the requirements of section 308. An order was thereupon made by the court on March 27, 1936, appointing two qualified physicians to investigate the condition of the prisoner. The report of these physicians, as part of the record, shows:

"(1). That they met at the Grand Jury Room at the Court House on the twenty eighth day of March A. D. 1936 and then and there examined the said Merrill A. Grove and gave him a full opportunity to be heard by himself, or by his counsel."

"(2). That they heard the statement of said prisoner."

The report was approved by the court of quarter sessions on March 31, 1936, and an order for the committment of Merrill A. Grove was entered.

■ It is apparent that all of the requirements of the act were complied with. There is no allegation in the petition that petitioner is now sane; there is no allegation that the Mental Health Act of Pennsylvania is unconstitutional. The petitioner invokes the federal jurisdiction on the sole ground that he was committed without due process of law because of insufficient notice or opportunity to be heard. That this court in a habeas corpus proceeding cannot permit or consider any contradiction of the record of another court is definitely determined in the recent case of Hill v. U. S. ex rel. Wampler, 298 U. S. ——, 56 S.Ct. 760, 80 L.Ed. —— (opinion filed by the Supreme Court May 18, 1936). The record of the state court in this case shows a full compliance with all the requirements of the statute, and shows also that Merrill A. Grove was given a full opportunity to be heard by himself or by his counsel, and that he was permitted to testify.

There have been but few attempts to bring into the federal courts proceedings by habeas corpus on behalf of persons in state insane asylums under commitments issued by state courts.

■ In the construction of the Constitution and laws of a state, the United States courts, as a general rule, follow decisions of the highest court of the state, unless they conflict with or impair the efficacy of some principles of the Federal Constitution, or of a federal statute, or rule of commercial or general law. It is well established that it is only when the fundamental rights secured by the Federal Constitution are invaded that the interference of federal courts is warranted. People of State of Illinois ex rel. Cusick v. Whipp (C.C.A.7) 73 F.(2d) 254. Where a writ of habeas corpus is available in the state, orderly procedure requires that, before a federal court is asked to issue a writ of habeas corpus in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy is afforded by the state. Hall v. People of State of California (C.C.A.9) 79 F.(2d) 132. In Mooney v. Holohan, 294 U.S. 103, 55 S. Ct. 340, 342, 79 L.Ed. 791, 98 A.L.R. 406, the Supreme Court, in a per curiam opinion, announced the doctrine as follows:

"We are not satisfied, however, that the state of California has failed to provide such corrective judicial process. The prerogative writ of habeas corpus is available in that state. Constitution of California, art. 1, § 5; article 6, § 4. No decision of the Supreme Court of California has been brought to our attention holding that the state court is without power to issue this historic remedial process when it appears that one is deprived of his liberty without due process of law in violation of the Constitution of the United States. Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by that Constitution. Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 28 L.Ed. 542. In view of the dominant requirement of the Fourteenth Amendment, we are not at liberty to assume that the state has denied to its court jurisdiction to redress the prohibited wrong upon a proper showing and in an appropriate proceeding for that purpose. * * *

"We do not find that petitioner has applied to the state court for a writ of habeas corpus upon the grounds stated in his petition here. That corrective judicial process has not been invoked, and it is not shown to be unavailable. Despite the many proceedings taken on behalf of the petitioner, an application for the prerogative writ now asserted to be peculiarly suited to the circumstances disclosed by his petition has not been made to the state court. Orderly procedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open."

Where the commitment of an insane person by a state court is involved, there are further reasons why a federal court in habeas corpus proceedings should not assume jurisdiction except possibly in extreme cases. It is fundamental that the state is parens patriæ of the insane. Hammon v. Hill (D.C.W.D.Pa.1915) 228 F. 999, 1001; Shapley v. Cohoon (D.C.Mass. 1918) 258 F. 752, 755.

In Mormon Church v. United States, 136 U.S. 1, 10 S.Ct. 792, 808, 34 L.Ed. 481, Justice Bradley, in delivering the opinion of the Supreme Court, said:

"In Fontain v. Ravenel, 17 How. 369, 384 [15 L.Ed. 80] Mr. Justice McLean, delivering the opinion of this court in a charity case, said: 'When this country achieved its independence, the prerogatives of the crown devolved upon the people of the states. And this power still remains with them, except so far as they have delegated a portion of it to the federal government. The sovereign will is made known to us by legislative enactment. The state, as a sovereign, is the parens patriæ.'

"This prerogative of parens patriæ is inherent in the supreme power of every state, whether that power is lodged in a royal person, or in the legislature, and has no affinity to those arbitrary powers which are sometimes exerted by irresponsible monarchs to the great detriment of the people, and the destruction of their liberties. On the contrary, it is a most beneficent function, and often necessary to be exercised in the interests of humanity, and for the prevention of injury to those who cannot protect themselves."

In Hammon v. Hill, supra, Judge Thomson of the Western District of Pennsylvania had before him a case very similar to the instant case under a prior act of 1883, and what was said there is applicable to the present case. Judge Thomson there said:

"Judge Cooley, in his work on Torts (page 179), says: 'An insane person, without any adjudication, may also lawfully be restrained of his liberty for his own benefit, either because it is necessary to protect him against a tendency to commit suicide, or to stray from those who would care for him, or because proper medical treatment requires it.'

"In Chavannes v. Priestly, 80 Iowa, 316, 45 N.W. 766, 9 L.R.A. 193, the court held that: 'The provision of the Constitution, that "no person shall be deprived of life, liberty or property without due process of law," does not require notice to a person, or his appearance, before he can be lawfully adjudged insane and restrained accordingly.'

"In this case the proceeding was under the Act of May 8, 1883 (P.L. 21). There is no allegation that the course of procedure laid down in that act was not strictly complied with. This act is one of a number of acts forming part of the system adopted by the state for the care and treatment of the insane. * * *

"Similar acts in other states have been sustained as constitutional. In re James Dowdell, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290; In re Le Donne, 173 Mass. 550, 54 N.E. 244; Ex parte Dagley, 35 Okl. 180, 128 P. 699, 44 L.R.A.(N.S.) 389; People ex rel. Peabody v. Chanler, 133 App.Div. [159] 163, 117 N.Y.S. 322.

"It appearing, therefore, that the petitioner is restrained and confined in an asylum for the care and treatment of the insane under and in accordance with the provisions of an act of assembly of the state of Pennsylvania; that this act is one of a number of acts constituting a system adopted by the state for the care of her insane; that the act under which relator was committed, or the act to which it is supplementary has not been declared unconstitutional, or in any respect illegal by the courts of Pennsylvania; that these acts provide a method by which the sanity of the relator can at any time be judicially determined on his application."

■ The Mental Health Act of 1923 (50 P.S.Pa. § 1 et seq.) provides ample safeguards for a person committed thereunder. As the state has provided adequate legislation for its function as parens patriæ in relation to the insane within its borders, and has provided protection for the rights of the individual involved, the federal courts should not obstruct the administration of such state laws, relating to the confinement of insane persons, through its own tribunals. This thought was well expressed in the opinion of the court in Re Huse (C.C.A.) 79 F. 305, 306:

"It is within the province of the state legislature to determine the method of procedure that should be followed in procuring the confinement of persons who have become insane to such an extent as to render them dangerous to the community, or to themselves, to be at large. If the steps provided for by the statute of the state have not been followed, the redress of persons who have been improperly confined without warrant or authority of law is by application to the courts of the state. The federal courts ought not, except in extreme cases, if at all, be called upon to interfere. * * *

"It was never intended by congress that the courts of the United States should, by writs of habeas corpus, obstruct the ordinary administration of the criminal laws, or laws relating to the confinement of insane persons, through its own tribunals."

This court is not equipped to deal suitably with a person in such condition as the relator herein is alleged to be and therefore should not merely discharge him from the custody in which he is now found. In King v. McLean Asylum of Massachusetts General Hospital (C.C.A.1, 1894) 64 F. 331, 351, 26 L.R.A. 784, the court said: "Whatever a state tribunal, having jurisdiction as parens patriæ, might accomplish, especially in Massachusetts, where the statute authority given to judges of the higher courts touching the committing of insane persons to asylums would cover the case of a prior informal committal, and enable them to apply an immediate and practical remedy by a new one, the circuit courts have not the machinery to deal suitably with a person in the condition in which the petitioner is alleged in this return to be, and would therefore be prohibited, both by public policy and humanity, from merely discharging him from the custody in which he might be found. In such circumstances a court would be called on to exercise more than ordinary judicial powers."

■ If the relator feels aggrieved, the statutes of Pennsylvania afford him ample opportunity to raise the question and to seek his remedies and, until that has been done, the federal court, as already stated, should not interfere. "For the welfare of the community, as well as that of the insane, and to guard against unnecessary conflicts between the federal courts and those of the state, both of which are equally bound to guard and protect rights secured by the Constitution, it is necessary that one who alleges that he has been deprived of his liberty in violation of his constitutional rights should have exhausted all his remedies in the state court before application should be made to a federal court." Shapley v. Cohoon, supra.

Counsel for the relator has relied upon the case of Walters v. McKinnis (D.C.) 221 F. 746, decided by Judge Thomson of tne Western District of Pennsylvania, on January 6, 1915; but this case loses all of its force in view of the fact that Judge Thomson on a later date, namely, October 29, 1915, after more mature deliberation, decided the case of Hammon v. Hill, to which I have already referred, and which is in accord with the decisions of other federal courts.

■ In the present case there is no direct attack upon the constitutionality of the state statute, and even if there were, this court would not be justified in declaring that statute unconstitutional. There has been a strict compliance with the course of procedure prescribed in the Mental Health Act of 1923. The record of the court of quarter sessions of Union county, Pennsylvania, shows that the relator had an opportunity to be heard, and this court cannot go behind the verity of that record. This court has no jurisdiction of the question of the sanity or insanity of the relator, is not the parens patriæ, and is not the proper forum for the determination of that question. Adequate remedies are provided in the state legislation, of which remedies this relator has not seen fit to avail himself in the state courts. Under such circumstances as those existing in this case, the federal court should not interfere and should not obstruct the orderly process and administration by the courts of the state.

The petition for writ of habeas corpus is denied, and the writ is dismissed.