### In re RYAN.

#### No. M–993.

District Court, E. D. Pennsylvania.

Sept. 29, 1942.

Rehearing Denied Dec. 24, 1942.

See 47 F.Supp. 1023.

John J. McDevitt, Jr., and Michael Francis Doyle, both of Philadelphia, Pa., for petitioner.

Arthur Littleton, Thomas B. K. Ringe, and John R. McConnell (of Morgan, Lewis & Bockius), all of Philadelphia, Pa., for respondent.

BARD, District Judge.

This action arises on a petition for a writ of habeas corpus to secure the release of William Ryan from confinement in the Institute of Mental Hygiene in Philadelphia, Pennsylvania. A return was filed on behalf of the respondent in which it is alleged that the confinement is in conformity with the provisions of Section 302 of the Mental Health Act of Pennsylvania. Considerable expert testimony was adduced before me relating to the mental condition of Ryan and the advisability of his confinement in this or in any institution.

The Mental Health Act of 1923, Act of July 11, 1923, P.L.998, 50 P.S. §§ 1–213, provides a comprehensive system for the commitment and custody of mentally ill persons. Section 302 of the Act, 50 P.S. § 42, which permits a mental hospital to receive in custody, without court order, a person alleged to be mentally ill and upon which respondent in the case at bar has authority for the confinement of Ryan, provides a number of safeguards against its abuse. This section reads:

"§ 42. Admission to hospital on application of relative or friend

"Whenever it shall appear that any person is mentally ill, or in such condition as to be benefited by or need such care as is required by persons mentally ill, the superintendent of any hospital for mental diseases may receive and detain such person, on the written application of any relative or friend, or the legal guardian of such person or any other responsible citizen, and on the certificate of two qualified physicians that said person is mentally ill and is in need of treatment and care in a hospital for mental diseases.

"The application aforesaid shall be, in form, prescribed by the department, and shall state the name, sex, and residence of the patient, the opinion that said patient is mentally ill and that care in such a hospital is necessary for his benefit, and the facts on which the said opinions are based, and such other facts or information as may be required by the department. If the facts called for, or any of them, are unknown to the applicant or applicants, it shall be so stated in the application.

"In the certificate, aforesaid, the physicians shall each state his residence, that he has resided in this State for at least three. years; that he has been licensed to practice medicine in this State; that he has been in the actual practice of medicine for at least three years, or has had at least one year's experience as physician in a hospital for mental patients; that he is not related by blood or marriage to the patient, or to the applicant or any of the applicants; that he is not connected in any way as medical attendant, or otherwise, with the hospital to which application has been made for the admission of the patient; that he has examined the patient with care and diligence within one week; and that, in his opinion, the patient is mentally ill and in need of hospital care. He shall further state in said certificate the information, relative to the patient, given him by others, and the facts, as to the physical and mental condition and the behavior of the patient, which he has himself observed, on which he bases his opinion.

"The aforesaid application and certificate shall be sworn to or affirmed before a judge or magistrate; and said judge or magistrate shall certify to the genuineness of the signatures, and to the standing and good repute of the signers of the certificate. The certificate shall not authorize the admission of the patient unless the patient shall be admitted within two weeks of the date thereof."

In addition, the Mental Health Act of 1923 specifically and carefully protects the rights of persons committed under its provisions. By Section 601 of Article VI of the Act, 50 P.S. § 171, a committed person is granted, inter alia, the following rights:

"(a) To communicate with his counsel and with the commissioner, and to be alone at any interview with his counsel or commissioners or representative of the department; * * *

"(e) To be furnished with writing materials, and reasonable opportunity, in the discretion of the physician in charge, for communicating, under seal, with any person or persons outside of such institution or place, and such communications shall be stamped and mailed;

"(f) To a writ of habeas corpus to determine whether or not he is properly detained as a mental patient, and the respondent in any such writ shall be required to pay the costs and charges of the proceedings unless the judge shall certify that, in his opinion, there were sufficient grounds for detaining the patient and putting him to his writ;

"(g) To be discharged as soon as, in the opinion of the medical attendant of such institution or place, he shall be restored to reason and competent to manage his own affairs."

The petitioner in the case at bar charged that the confinement of Ryan was not made in conformity with the provisions of Section 302 of the Mental Health Act and that, even if it were, the Act is in violation of the Fourteenth Amendment of the Constitution in that it deprives a person committed thereunder of his liberty without due process of law.

I find it unnecessary to consider the merits of this matter because it does not present a case in which a federal court should assume jurisdiction to issue a writ of habeas corpus. The laws of Pennsylvania have established the procedure for confinement of persons alleged to be mentally ill and the tribunals and methods by which their rights may be protected and, in the absence of exceptional circumstances not present in the case at bar, there is no reason why the federal courts should be called upon to interfere. As was said in In re Huse, 9 Cir., 79 F. 305, at page 306: "The facts set forth in the petition are not of such a character as to authorize this court to issue the writ. It is within the province of the state legislature to determine the method of procedure that should be followed in procuring the confinement of persons who have become insane to such an extent as to render them dangerous to the community, or to themselves, to be at large, If the steps provided for by the statute of the state have not been followed, the redress of persons who have been improperly confined without warrant or authority of law is by application to the courts of the state. The federal courts ought not, except

in extreme cases, if at all, be called upon to interfere. * * * It was never intended by congress that the courts of the United States should, by writs of habeas corpus, obstruct the ordinary administration of the criminal laws, or laws relating to the confinement of insane persons, through its own tribunals."

No resort has been had by the petitioner in the case at bar to the state courts. His basis for invoking the jurisdiction of the federal court, so far as appears, is that the provisions of the Mental Health Act of 1923 violate the Federal Constitution in that they authorize the deprivation of the liberty of a person without the opportunity for hearing required by due process of law. That such an attack on the validity of the Act cannot be sustained, however, in view of the safeguards against the abuse of the power of commitment and of the guarantee to a committed person of the right to bring habeas corpus proceedings at any time to test the propriety of his confinement, was decided in Hammon v. Hill, D. C.; 228 F. 999, in which the constitutionality of the act in Pennsylvania which was the predecessor to the Mental Health Act of 1923 was challenged on this ground. Authorities from other jurisdictions to the same effect are collected and reviewed in the opinion of Judge Thomson of the Western District of Pennsylvania in that case.

But even assuming the attack on the constitutionality of the Mental Health Act to be valid, this affords no basis for invoking federal jurisdiction to issue a writ of habeas corpus where state remedies are available. It is established that the obligation to guard and enforce every right secured by the Constitution of the United States rests upon the state courts equally with the federal courts and that, in the absence of exceptional circumstances, orderly procedure requires recourse to the judicial remedies afforded by the state before habeas corpus proceedings for the release of a person held under a state commitment are brought in a federal court. Mooney v. Holohan, 294 U.S. 108, 55 S.Ct. 340, 79 L. Ed. 791, 98 A.L.R. 406; Hall v. People of State of California, 9 Cir., 79 F.2d 132; Davis v. Dowd, 7 Cir., 119 F.2d 338.

A still further reason why a federal court should not assume jurisdiction in habeas corpus proceedings where the commitment of an allegedly insane or mentally ill person pursuant to state law is involved was pointed out in United States ex rel. Grove v. Jackson, D. C., 16 F.Supp. 126. In that case the petitioner had been committed to a mental hospital under the provisions of Section 308 of the Mental Health Act of 1923, 50 P.S. § 48, and sought to procure his release by a writ of habeas corpus brought in the United States District Court for the Middle District of Pennsylvania. In denying the application for the writ, Judge Watson, in an exhaustive opinion analyzing numerous authorities, stated at pages 129, 130 of 16 F.Supp.:

"Where the commitment of an insane person by a state court is involved, there are further reasons why a federal court in habeas corpus proceedings should not assume jurisdiction except possibly in extreme cases. It is fundamental that the state is parens patriæ of the insane. Hammon v. Hill, D.C.W.D.Pa.1915, 228 F. 999, 1001; Shapley v. Cohoon, D.C.Mass.1918, 258 F. 752, 755.

*    *    *    *    *    *    *

"The Mental Health Act of 1923 (50 P.S. Pa. § 1 et seq.) provides ample safeguards for a person committed thereunder. As the state has provided adequate legislation for its function as parens patriæ in relation to the insane within its borders, and has provided protection for the rights of the individual involved, the federal courts should not obstruct the administration of such state laws, relating to the confinement of insane persons, through its own tribunals.

*    *    *    *    *    *    *

"This court is not equipped to deal suitably with a person in such condition as the relator herein is alleged to be and therefore should not merely discharge him from the custody in which he is now found. In King v. McLean Asylum of Massachusetts General Hospital [1 Cir.], 1894, 64 F. 331, 351, 26 L.R.A. 784, the court said: 'Whatever a state tribunal, having jurisdiction as parens patriæ, might accomplish, especially in Massachusetts, where the statute authority given to judges of the higher courts touching the committing of insane persons to asylums would cover the case of a prior informal committal, and enable them to apply an immediate and practical remedy by a new one, the circuit courts have not the machinery to deal suitably with a person in the condition in which the petitioner is alleged in this return to be, and would therefore be prohibited, both by public policy and humanity, from merely discharging him from the custody in which he might be found. In such

circumstances a court would be called on to exercise more than ordinary judicial powers.'

"If the relator feels aggrieved, the statutes of Pennsylvania afford him ample opportunity to raise the question and to seek his remedies and, until that has been done, the federal court, as already stated, should not interfere. 'For the welfare of the community, as well as that of the insane, and to guard against unnecessary conflicts between the federal courts and those of the state, both of which are equally bound to guard and protect rights secured by the Constitution, it is necessary that one who alleges that he has been deprived of his liberty in violation of his constitutional rights should have exhausted all his remedies in the state court before application should be made to a federal court.' Shapley v. Cohoon, supra.

"Counsel for the relator has relied upon the case of Walters v. McKinnis, D.C., 221 F. 746, decided by Judge Thomson of the Western District of Pennsylvania, on January 6, 1915; but this case loses all of its force in view of the fact that Judge Thomson on a later date, namely, October 29, 1915, after more mature deliberation, decided the case of Hammon v. Hill, to which I have already referred, and which is in accord with the decisions of other federal courts.

\* \* \* \* \* \* \*

"This court has no jurisdiction of the question of the sanity or insanity of the relator, is not the parens patriæ, and is not the proper forum for the determination of that question. Adequate remedies are provided in the state legislation, of which remedies this relator has not seen fit to avail himself in the state courts. Under such circumstances as those existing in this case, the federal court should not interfere and should not obstruct the orderly process and administration by the courts of the state."

It may be noted that in the present case petitioner seeks not only an order releasing Ryan from the custody of the respondent but also, under the authority of Rule 17(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, such further order as this court deems proper for the temporary care of the person and property of Ryan. There seems to be little doubt that Rule 17(c), relied upon by the petitioner, deals only with the protection of incompetents in their status

as parties, and gives the district courts no general powers over their persons or property. Such broad powers as pointed out by Judge Watson are peculiarly within the function and jurisdiction of the courts of this state as parens patriæ of the mentally ill.

The petition for a writ of habeas corpus is denied and the writ is dismissed.