**Application of St. Clair E. MILLER, Plaintiff,**

v.

**The DIRECTOR, MIDDLETOWN STATE HOSPITAL, MIDDLETOWN, NEW YORK, Defendant.**

United States District Court
S. D. New York.
Nov. 30, 1956.

St. Clair E. Miller, pro se.

Jacob K. Javits, Atty. Gen., of New York, for defendant, Director, Middletown State Hospital. Harold Borgwald, Asst. Atty. Gen., of counsel.

IRVING R. KAUFMAN, District Judge.

■ Defendant appearing here by the Attorney General of the State of New York has moved for an order dismissing plaintiff's complaint pursuant to Rule 12 (b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. on the ground that the Court lacks jurisdiction over the subject matter, lacks jurisdiction over the persons and that the complaint fails to state a claim upon which relief may be granted. The plaintiff appears pro se, and, as is not unusual in such a situation, his complaint is prolix, redundant and contains much irrelevant matter. As required by the rules,[1] however, I have construed the pleading with liberality to determine whether sufficient can be drawn from its allegations to base any valid claim.

The record indicates that plaintiff was duly committed to a state mental hospital by order of a New York State Supreme Court Justice pursuant to section 873 of the New York Code of Criminal Procedure. Plaintiff escaped from that hospital, was returned, and later released to the custody of his aunt. In November 1954, due to an alleged relapse in his mental condition, he was again returned to the hospital and subsequently transferred to Middletown State Hospital. On August 10, 1955, plaintiff escaped from this hospital, and established residence in Virginia. He is still carried on escape status by the hospital authorities.

Plaintiff now seeks an order for a permanent injunction restraining the Director, Middletown State Hospital, and his agents, who are unnamed, from further confining or seeking to confine the petitioner in a mental institution and also for a judgment of $300,000. for alleged illegal confinement. These remedies should be granted, he contends, basically because he is and always has been sane.

Plaintiff urges that this Court has jurisdiction because he is now a citizen of Virginia. Although there may be some question as to whether the plaintiff has established a genuine domicile in Virginia,[2] for purposes of this motion I will assume that there is diversity.

■ The complaint is directed against an unnamed Director of the Middletown State Hospital. Plaintiff asserts in his affidavit opposing the present motion, that by "Director" he means to include "all Directors and responsible officials, their agents and employees under whose functioning plaintiff was unlawfully imprisoned * * *". Rule 10(a) of the Federal Rules of Civil Procedure provides that, "In the complaint the title of the action shall include the *names* of all the parties * * *" (Emphasis added).) While it may be possible to dismiss the action even against the present Director for failure to state his name in the complaint, since he was served with the summons and complaint and was thereby given notice of the suit, and since he was not prejudiced by the omission, I will not base dismissal on this technical ground, but shall deal with the main issues.

■ We must determine whether there is a claim upon which any relief may be granted against the defendant. First, there is the question of civil liability for illegal confinement. In the first instance this is to be determined by looking to New York law. Even if we assume, as we must for purposes of this motion, that plaintiff Miller has always been sane and if we assume that the present Director was also the Director during Miller's confinement, which appears questionable from the allegations

1. Rule 8(f) Federal Rules of Civil Procedure; Dioguardi v. Durning, 2 Cir., 1944, 139 F.2d 774.

2. In this regard, see Morris v. Gilmer, 1889, 129 U.S. 315, 9 S.Ct. 289, 32 L. Ed. 690, where the Court held a purported change of citizenship ineffectual, upon evidence which satisfied it of the plaintiff's intention to resume his former residence as soon as federal jurisdiction over his action had been established. In the instant case, plaintiff asserts as one of the reasons for the present action, his desire to return to New York unmolested.

in the complaint, nevertheless there is no cause of action under the New York law.[3]

 Although plaintiff bases jurisdiction on diversity, indicating thereby that his action is based on state rather than federal law, if his allegations stated a valid claim under any applicable law the motion to dismiss must be denied. For this reason, I have inquired into the possibility that the Civil Rights Act[4] may provide a cause of action for the plaintiff. It is not necessary, however, to determine whether the allegations in the complaint are sufficient to satisfy the essential elements of an action under that Act,[5] since even if they are, the defendant would still be immune from liability. It now appears to be well settled that the Civil Rights Act did not abolish some of the well-established common law immunities such as those for legislators,[6] judges[7] and persons in other quasi-judi-

---

3. "Even if the order was erroneously or improvidently made by the special surrogate * * *, the State would not be liable for receiving and detaining the claimant under the order of commitment. The officers of the State Hospital were not required before receiving claimant under the order to institute an inquiry in order to satisfy themselves that the special surrogate had not erroneously or improvidently made it. No such burden is cast upon them. They were confronted by an order valid on its face and it was their duty to yield obedience to it. In complying with that order the officers of the institution and the State did not subject themselves to an action for false imprisonment. There is no merit in this claim." Douglas v. State, 3d Dept. 1945, 269 App.Div. 521, 524, 56 N.Y.S.2d 245, 247–248. See Berger v. Village of Seneca Falls, Sup.1956, 151 N.Y.S.2d 133, 137; cf. Ravenscroft v. Casey, 2 Cir., 1944, 139 F.2d 776, 778. If it is argued that the director was performing more than a ministerial act, but was exercising his discretion in determining that plaintiff should not be released, there is still no liability. It is black letter law that where an administrative action involves exercise of discretion, the administrative officials are immune from liability for tort. See Yaselli v. Goff, 2 Cir., 1926, 12 F.2d 396; Prosser, Torts 780–84 (2d ed. 1955); Davis, Administrative Law, 801–811 (1951).

4. Civil Rights Act of 1871, now contained in 42 U.S.C.A. §§ 1983, 1985 (formerly 8 U.S.C.A. §§ 43 and 47).

5. The only specific allegations against a director of the Middletown State Hospital (it is unclear whether they refer to the present director) are that he refused to release the plaintiff when he, the plaintiff, requested it; that staff psychiatrists or the director talked Miller out of bringing a petition for a habeas corpus or in some other way "frustrated" his attempts to bring one; and that they intercepted some of his correspondence. In addition to these specific allegations plaintiff makes broad charges that the director acted unconstitutionally and violated plaintiff's right to due process. While allegations of a complaint should not be scrutinized with meticulous nicety on motions to dismiss for insufficiency, if the defendant is not to be deprived of the same rights enjoyed by other defendants more than broad allegations of "unconstitutionality" are required.

"But when a litigant contends that the factual allegations of his complaint demonstrate that a group of public officers, presumed to have done their duty, were guilty of such wanton, spiteful, malicious prejudice that their acts, ostensibly done in the performance of their statutory duties, were therefore not acts done 'in relation to or connected with' those duties but were in fact vengeful acts committed for the purpose of personally injuring the litigant, the reviewing court must examine those factual allegations with meticulous care to determine whether such a case is stated. For, as frequently stated by the courts, it is easy for a disgruntled litigant to state his conclusion, and to even believe, that the officer responsible for the real or imagined injustice was guilty of the rankest kind of malice." Gibson v. Reynolds, 8 Cir., 1949, 172 F.2d 95, 99–100.

6. Tenney v. Brandhove, 1951, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (immunity of members of a state legislature for acts done within the sphere of legislative activity.)

7. Francis v. Crafts, 1 Cir., 1953, 203 F. 2d 809, certiorari denied, 346 U.S. 835, 74 S.Ct. 43, 98 L.Ed. 357; Morgan v. Sylvester, S.D.N.Y.1954, 125 F.Supp. 380, affirmed 2 Cir., 1955, 220 F.2d 758, certiorari denied, 1955, 350 U.S. 867, 76 S.Ct. 112, rehearing denied, 350 U.S. 919, 76 S.Ct. 201 (immunity of judges

cial positions.[8] To the extent that the director was called upon to exercise discretion in determining when the plaintiff should be discharged, he was exercising a quasi-judicial role and is therefore immune. To the extent that he was merely executing the order of the State Supreme Court justice his immunity is equally clear.[9] It would certainly be paradoxical to grant immunity to the judge entering the order and yet impose liability on those executing it.

Since I find no ground alleged in the complaint upon which the plaintiff may recover civil damages from the defendant, his complaint must be dismissed as to that claim.

We come now to the second issue, whether plaintiff can obtain an injunction against defendant's future confinement of plaintiff in the Middletown State Hospital. This presents an issue of jurisdiction over the subject matter. Since this is the first case, to my knowledge, in which an escapee from a state mental institution has sought to enjoin that institution from resuming custody over him, it is necessary to look to analogous fields and general policies of federal jurisdiction to determine the guiding principles.

█ It has been clearly established that although a district court may have valid jurisdiction over a case either by reason of diversity of citizenship or a federal question, it has discretion in certain situations to determine whether it should accept that jurisdiction.

"Equitable relief may be granted only when the District Court, in its sound discretion exercised with the 'scrupulous regard for the rightful

independence of state governments which should at all times actuate the federal courts,' is convinced that the asserted federal right cannot be preserved except by granting the 'extraordinary relief of an injunction in the federal courts.' Considering that '[f]ew public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies,' the usual rule of comity must govern the exercise of equitable jurisdiction by the District Court in this case. Whatever rights appellee may have are to be pursued through the state courts." Alabama Public Service Commission v. Southern Ry., 1951, 341 U.S. 341, 349–350, 71 S.Ct. 762, 768, 95 L.Ed. 1002.

Since this Court has the power to withhold equitable relief, the question is whether it should do so in the instant case. Plaintiff alleges that he was sane at the time of his commitment and is now sane, and that there were certain abuses of procedure during his precommitment examinations which he believes are of constitutional proportions. These assertions are vigorously disputed by the defendant. The director contends in a letter annexed to plaintiff's complaint that plaintiff's mental state did not warrant release as of the time he escaped and that he cannot be discharged now without a further examination. Should this issue be litigated in a federal court at the request of an escapee when he has never given the state courts, which provide remedies for the alleged abuses, the opportunity to consider the matter?[10]

from civil liability for acts done by them in the exercise of their judicial functions).

8. Gregoire v. Biddle, 2 Cir., 1949, 177 F. 2d 579 (immunity of prosecuting attorney and others as quasi-judicial officers).

9. Francis v. Lyman, 1 Cir., 1954, 216 F.2d 583 (immunity of a warden when executing a judicial order of commitment issued by a court of general ju-

risdiction and fair and regular upon its face); Ginsburg v. Stern, D.C.W.D.Pa. 1954, 125 F.Supp. 596 (immunity of a prothonotary or clerk in following an order of the court).

10. Although Miller did attempt to challenge his commitment by a writ of habeas corpus issued by the County Judge of Orange County, New York, the writ was withdrawn at Miller's request in April, 1955.

In a habeas corpus proceeding, before a federal court will grant review to an inmate of a state mental hospital, the petitioner must have exhausted his state remedies.[11] Apart from the general policies upon which the doctrine of exhaustion of state remedies is based,[12] there are a number which are peculiarly applicable to the mental patient situation.

"The federal courts are not eager or quick to interfere with state proceedings. The disposition and care of insane persons is peculiarly one within the function of the state, to be determined by the state in due regard to the safety of the public and to the sympathetic and humane treatment of its own unfortunate citizens. This court should not, merely because it may have the power to do so, interfere with the disposition which the state has considerately determined as necessary or wise in the care of its insane. While federal courts cannot discard or refuse to assume the responsibility that rests on them for the protection of rights guaranteed by the Federal Constitution in cases where these rights cannot otherwise be protected, every consideration of comity and propriety demands that in cases of this sort recourse should first be had to the state courts whose equal duty it is to furnish that protection and which have a primary concern with the subject matter of this petition." Hall v. Verdel, D.C.W.D.Va.1941, 40 F.Supp. 941, 947.

These sentiments have been generally echoed by other federal courts.

"It is within the province of the state' legislature to determine the method of procedure that should be followed in procuring the confinement of persons who have become insane to such an extent as to render them dangerous to the community, or to themselves, to be at large. If the steps provided for by the statute of the state have not been followed, the redress of persons who have been improperly confined without warrant or authority of law is by application to the courts of the state. The federal courts ought not, except in extreme cases, if at all, be called upon to interfere * * *." In re Huse, 9 Cir., 1897, 79 F. 305, 306.

"[The state mental health act] provides ample safeguards for a person committed thereunder. As the state has provided adequate legislation for its function as *parens patriae* in relation to the insane within its borders, and has provided protection for the rights of the individual involved, the federal courts should not obstruct the administration of such state laws, relating to the confinement of insane persons, through its own tribunals." United States ex rel. Grove v. Jackson, D.C. M.D.Pa.1936, 16 F.Supp. 126, 130.

The relevance of these policies to the instant situation cannot be doubted. In some respects the present case is even a stronger one for denying federal review in favor of original state action. It would certainly be incongruous to hold that an inmate who escapes from a mental hospital is in a better position with regard to access to the federal courts than one who observes the rules and remains in the hospital. Such a view would only serve to undermine state authority and procedures in the field of commitment of the insane—a field which is peculiarly suited to state regulation and peculiarly unsuited to control by the federal courts. Furthermore, there is no allegation that the state commitment procedure is unconstitutional.

11. E. g., In re Ryan, D.C.E.D.Pa.1942, 47 F.Supp. 10; Ex parte Moore, D.C. D.Ore.1942, 43 F.Supp. 886; Hall v. Verdel, D.C.W.D.Va.1941, 40 F.Supp. 941; United States ex rel. Grove v. Jackson, D.C.M.D.Pa.1936, 16 F.Supp. 126.

12. See Mooney v. Holohan, 1935, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791.

The plaintiff is presently at large and the "imminent injury" which he alleges is that if he returns to New York he may be incarcerated if the staff physicians at Middletown State Hospital do not consider his present mental condition sound. Surely, even if we accept all of the plaintiff's allegations, this is not the type of exceptional situation which would authorize federal equity interference with the enforcement of state laws.[13]

Therefore, I conclude that this Court does not have jurisdiction over the subject matter of this suit at the present time. Defendant's motion to dismiss is granted. So ordered.

---

13. In an area analogous to the present case, that of the administration of criminal justice, the Supreme Court has indicated that federal district courts should be extremely reluctant to interfere with state laws. See Watson v. Buck, 1941, 313 U.S. 387, 61 S.Ct. 962, 85 L.Ed. 1416; Beal v. Missouri Pacific Ry., 1940, 312 U.S. 45, 61 S.Ct. 418, 85 L.Ed. 577.