# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## EX PARTE, ROLLINS.

### MARCH 19th, 1885.

1. HABEAS CORPUS—*Where it lies not.*—The remedy for mere errors in proceedings of courts of competent jurisdiction, is by writ of error or appeal, and not by writ of *habeas corpus.*

2. IDEM—*Where it lies.*—Where the proceedings, whether civil or criminal, under which a party is detained in custody are void, as where the court has no jurisdiction, or where the statute under which the proceedings are inaugurated is unconstitutional, the same are reviewable on *habeas corpus*, and the party may be discharged.

3. UNCONSTITUTIONAL—*Inter-state commerce.*—Sections 39 and 40, of chapter 1, of the revenue laws of Virginia, (Acts 1883-'4, p. 582), are unconstitutional, because discriminating in favor of publishers of books, &c., in this state, and against such publishers in other states, thus contravening clause 3, section 8, article 1, of the Federal constitution, which gives Congress the right to regulate commerce between the several states. *Webber* v. *Virginia*, 103 U. S. 344.

The petitioner, Rollins, was taken into custody by the sheriff of Roanoke county, under a writ of *capias ad respondendum*, issued from the clerk's office of the county court of said county, in an action of debt wherein the commonwealth was plaintiff, and the petitioner was defendant. The action was under Code 1873, chapter 34, section 87, which enacts that the penalties prescribed by the revenue laws, except those recoverable in the circuit court of the city of Richmond by existing laws, shall be recoverable by action of debt, presentment, indictment, or information, and is founded on the provisions of sections 39 and

40, chapter 1, of the revenue laws (Acts 1883–'4, page 582). The object of the action was to recover a fine of $100, which, it was alleged, the petitioner had incurred for receiving subscriptions for and furnishing books, &c., published beyond the limits of this state, without having obtained a license so to do, according to the provisions of said sections 39 and 40, which are as follows:

"39. Any person, other than a licensed merchant, who shall receive subscriptions for, or shall in any manner furnish newspapers, books, maps, prints, pamphlets, or periodicals, *printed or published beyond the limits of this state*, shall be deemed a book agent. * * * * Any person violating the provisions of this section shall pay a fine of not less than fifty dollars, nor more than one hundred dollars for each offence.

"40. A book agent shall pay for the privilege of acting as such, the sum of ten dollars." * *

The petitioner alleges, that at the time the said action was commenced, he was engaged in selling as agent, in the county of Roanoke, books printed and published beyond the limits of this state; and insists that the provisions of the statute imposing a tax on agents for the sale of books printed and published beyond the limits of this state—there being no such tax imposed for the sale of books printed and published within this state—are unconstitutional and void. He, therefore, further insists, that his arrest and detention are illegal, and prays to be discharged from custody.

Upon the filing of the petition, a writ was awarded commanding the sheriff of Roanoke county to have before the court the body of the petitioner, together with the cause of his detention, and to abide the order of the court. The sheriff's return sets forth that he holds the petitioner in custody under an order or process in an action of debt pending in said county as stated in the petition; that the petitioner at the time the action was commenced, was an agent engaged in selling books printed and published beyond the limits of this state, and that

he had not obtained a license so to do, as required by law. To this return the petitioner demurred.

*John E. Penn*, for the petitioner.

*Attorney-General, F. S. Blair*, for the commonwealth.

Lewis, P. (after stating the case), delivered the opinion of the court.

The first question is, whether, on the facts appearing by the return, the case is a proper one to be considered on *habeas corpus*.

It is a well-established and undisputed principle that mere errors in the proceedings of a court of competent jurisdiction cannot be reviewed on *habeas corpus*. In such case the remedy, if any, is by writ of error or appeal. But where the proceedings under which the party complaining is detained in custody are void, as where the court is without jurisdiction, the same are reviewable on *habeas corpus*, and the party will be discharged.

"If it appear," says Lord Hale, "by the return of the writ that the party be wrongfully committed, or by one that hath not jurisdiction, or for a cause for which a man ought not to be imprisoned, he shall be discharged." Bac. Abr., *Habeas corpus*, B–10; Hurd on *Habeas corpus*, 333.

It was on this ground that this court proceeded in *ex-parte Meredith*, 33 Gratt. 119, though the proceeding was really an amicable one to determine the title to the office of county judge of Prince William county. And the same principle is illustrated by numerous decisions of the Supreme Court of the United States.

Thus, in *ex parte Lange*, 18 Wall. 163, the petitioner was discharged on *habeas corpus* on the ground that he was illegally restrained of his liberty by virtue of a void judgment of a

Federal court.    See also *ex parte Siebold*, 100 U. S. 371; *ex parte Wilson*, 114 Id. 417.

On the other hand, in *ex parte Watkins*, 3 Pet. 193, the writ was refused, because the petitioner was in custody under the order of a court of competent jurisdiction, which was therefore conclusive on all other courts.    So, on the same ground, the court refused to interfere in the following cases: *ex parte Kearney*, 7 Wheat. 38; *ex parte Parks*, 93 U. S. 18; *ex parte Virginia*, 100 Id. 339; *ex parte Curtis*, 106 Id. 371; *ex parte Yarbrough*, 110 Id. 651; *ex parte Crouch*, 112 Id. 178; *ex parte Bigelow*, 113 Id. 328.

In *ex parte Siebold, supra*, the writ was applied for to discharge the petitioner from custody, who had been indicted and convicted in the Circuit Court of the United States for the district of Maryland, under certain acts of Congress which were alleged to be unconstitutional.    And the question arose, whether the court had jurisdiction to discharge a party imprisoned under sentence of a United States court upon a conviction of a crime created by and indictable under an unconstitutional act of Congress; and it was held that it had.

"The validity of the judgment," said the court, "is assailed on the ground that the acts of congress, under which the indictment was found, are unconstitutional.    If this position is well taken, it affects the foundation of the whole proceedings. An unconstitutional law is void, and is as no law. · An offence created by it is not a crime.    A conviction under it is not merely erroneous, but illegal and void, and cannot be a legal cause of imprisonment.    *    *    We are satisfied that the present is one of the cases in which this court is authorized to take jurisdiction.    We think so, because. if the laws are unconstitutional and void, the circuit court acquired no jurisdiction of the case."

The principle there asserted fully sustains the jurisdiction of this court in the present case.    There, it is true, the imprisonment complained of was by virtue of a final judgment in a criminal prosecution; here it is under original process in a civil

action.   But the principle is in both cases the same.   Formerly it was doubted whether *habeas corpus* was a proper remedy in case of arrest under civil process.   *Ex parte Wilson*, 6 Cranch, 52.   But such doubt, from whatever source it may have arisen, is no longer entertained.

In *Nelson & Graydon* v. *Cutter*, 3 McLean, 326, the defendants in a civil action were discharged on *habeas corpus*, on the ground that the affidavit was insufficient upon which the *capias ad respondendum* issued under which they had been arrested.   And according to the rule acted on in that and similar cases, the true test is, whether the process is illegal and void, or irregular merely.   If the former, then the party in custody is restrained of his liberty without due process of law, and is entitled to the immediate remedy of *habeas corpus;* but not so in the latter case.   *Ex parte Randolph*, 2 Brock. 447, 475 ; *ex parte Rowland*, 104 U.S. 604; *Bank U. S.* v. *Jenkins*, 18 Johns. 305; Bac. Abr. *Habeas corpus*, B, 3.

The next question, then, is whether the provisions of the revenue laws, the validity of which is questioned in the present case, are, as alledged, unconstitutional.   And upon this point there would seem to be no room for doubt, in view of several recent decisions of the Supreme Court of the United States.

In *Webber* v. *Virginia*, 103, U. S. 344, certain provisions of the revenue laws of this state, imposing a tax on the privilege of selling the manufactured articles or machines of other states or territories—there being no such tax imposed on the privilege of selling the manufactured articles or machines of this state— were held invalid, because repugnant to that clause of the Federal constitution which gives to congress the power to regulate commerce among the several states.

In the present case, the evident purpose of the legislature in enacting the sections of the statute in question was to discriminate in favor of the publishers of books, newspapers, periodicals, etc., in this state, and against those engaged in such business elsewhere.   Thus all persons, other than licensed merchants,

who receive subscriptions for, or in any manner furnish, books, newspapers, periodicals, etc., published beyond the limits of this state, are required to pay a license-tax, while no such tax is imposed for the privilege of selling the publications of this state. This is in effect imposing a tax on the publications of other states, and is to that extent a regulation of commerce in such publications between the states, and, therefore, in conflict with the constitution of the United States.

In *Webber* v. *Virginia, supra,* Mr. Justice Field, speaking for the court, said: "Sales by manufacturers are chiefly effected through agents. A tax upon their agents when thus engaged is, therefore, a tax upon them, and if this is made to depend upon the foreign character of the articles, that is upon their having been manufactured without the state, it is to that extent a regulation of commerce in the articles between the states. It matters not whether the tax be laid directly upon the articles sold, or in the form of licenses for their sale. If by reason of their foreign character the state can impose a tax upon them, or upon the person through whom the sales are effected, the amount of the tax will be a matter resting in her discretion. She may place the tax at so high a figure as to exclude the introduction of the foreign article, and prevent competition with the home product. It was against legislation of this discriminating kind that the framers of the constitution intended to guard when they vested in Congress the power to regulate commerce among the several states." See also *Welton* v. *Missouri,* 91 U. S. 275; *County of Mobile* v. *Kimball,* 102 Id. 691; *Brown* v. *Houston,* 114 Id. 622; *Walling* v. *Michigan,* 116 Id. 446.

The ruling in those cases is decisive of this. The books, newspapers, periodicals, etc., printed or published beyond the limits of the state, and for the sale of which a license-tax is imposed by the revenue laws, stand on the same footing in this particular with the manufactured articles and machines of other states or territories. All are alike articles of commerce, and

as such equally protected against discriminating regulations by authority of state legislation.

It follows that the petitioner is illegally in custody, and an order for his discharge will be entered accordingly.

Fauntleroy, J., and Richardson, J., concurred in the opinion of Lewis, P.

Lacy, J., and Hinton, J., dissented.

Petitioner discharged.