# Richmond.

## Ex Parte Marx.

### April 18th, 1889.

1. Sabbath-breaking—*Justices—Fines—Trial by jury.*—The fine prescribed for violating the Sabbath, is recoverable before a justice and by a civil warrant. Code, secs. 3799, 2939, and 717. The constitutional rights to trial by jury does not extend to such an offence.

2. Habeas corpus—*Judgment – Sufficiency of evidence.*—Sufficiency of evidence wherein judgment is founded, cannot be enquired into on *habeas corpus,* where the justice had jurisdiction and the conduct of the case has been in strict conformity with the rules of procedure in such cases.

3. Idem—*Affidavits—Writ of error.*—Code, sec. 3035, providing for the use of affidavits, refers only to the illegality, not the irregularity, of the prisoner's detention, and does not authorize a review of the sufficiency. A writ of *habeas corpus* is not a writ of error, which is the remedy for mere errors in proceedings of courts of competent jurisdiction. *Ex parte Rollins,* 80 Va., 314.

4. Idem—*Fines—Commitment—Case at bar.*—Justice imposed a fine upon defendant for violating the Sabbath, and upon defendant's refusing to pay it, committed him to jail "for one year unless the fine be sooner paid": *held,* the commitment was such a departure from the terms of the statute, from which the justice derived his authority, the letter whereof must be strictly followed, and by which no particular term of imprisonment is prescribed, and is defective and invalid. *Jones' Case,* 20 Gratt., 848.

On petition for a writ *habeas corpus.*

In December, 1888, a judgment for a fine of two dollars and costs was rendered by Stephen West, a justice of the peace of Warwick county, against the petitioner, Oscar Marx, a Jew, for unlawfully carrying on his business, as a retail merchant,

on a Sabbath day.   Upon the rendition of the judgment, the petitioner expressed to the justice a determination not to pay it, whereupon he was committed by the justice to the jail of the said county.   The *mittimus* commands the jailer to receive the said Marx into his jail, "and there him safely keep *for the term of one year*, unless the said sum shall be sooner paid, or until he be otherwise discharged by due course of law."

The petitioner thereupon by his counsel applied to this court for a writ of *habeas corpus*, which was awarded, and to which return has been made, setting forth in detail the facts just mentioned.

*Courtney & Patterson*, for petitioner.

*L. C. Bristow R. G. Bickford*, for commonwealth.

LEWIS, P., delivered the opinion of the court.

Petitioner insists that he is illegally restrained of his liberty on three grounds: (1) Because the justice by whom the judgment was rendered had no jurisdiction to proceed against him, and therefore that the proceedings were *coram non judice* and void: (2) because the conviction is not warranted by the evidence: and (3) because, even if the justice had jurisdiction of the case, the commitment is void, because it transcends the power of the justice.

1. As to the question of jurisdiction.

Section 3799 of the Code provides that "if a person, on a Sabbath day, be found laboring at any trade or calling, or employ his apprentices or servants in labor or other business, except in household or other work of necessity or charity, he shall forfeit two dollars for each offence," every day any servant or apprentice is so employed constituting a distinct offence. The section immediately following, however, excepts from the operation of the law "any person who conscientiously believes

that the seventh day of the week ought to be observed as a Sabbath, and actually refrains from all secular business and labor on that day, provided he does not compel an apprentice or servant, not of his belief, to do secular work or business on a Sunday, and does not on that day disturb any other person."

The word "forfeit" here used is synonymous with fine. Sec. 745. And the question, therefore, in this connection is, How is such fine to be enforced or collected, if it is collectable by judicial process at all?

Section 712 enacts that "where any statute imposes a fine, unless it be otherwise expressly provided, or would be inconsistent with the manifest intention of the General Assembly, it shall be to the commonwealth, and recoverable by presentment, indictment, or information. Where a fine without corporal punishment is prescribed, the same may be recovered, if limited to an amount not exceeding twenty dollars, by warrant, and if not so limited, by action of debt, or action on the case, or by motion. The proceeding shall be in the name of the commonwealth."

It is also provided by section 2939, which relates to "warrants for small claims," that any claim to a fine, not exceeding twenty dollars, which would be recoverable by an action at law, shall be cognizable by a justice, the proceeding to be by civil warrant, as in the case of other small claims enumerated in the same section. And by section 717 it is enacted that "when any fine is imposed by a justice, he may commit the defendant to jail until the fine and costs are paid, or until the costs are paid where there is no fine, *but he shall not issue any execution therefor.*" And this provision must be construed as giving the only means to a justice for carrying into effect a judgment rendered by him for a fine in any case, civil or criminal. In other words, what would seem to be an implied authority to issue a *fi. fa.* upon a judgment for a fine under section 2948, relating to executions on judgments for small claims, is controlled by the express prohibition contained in

section 717, which applies to all cases in which *any fine* is imposed by a justice—the term "impose" applying as well to the rendition of a judgment for a fine in a civil, as in a criminal, case. By the act of March 14, 1878 (Acts 1877–78, p. 377), a justice was empowered in certain cases to issue an execution of *fi. fa.* or a *capias pro fine* for fine imposed by him, but that provision has been repealed.

It is thus apparent that not only is the statutory fine prescribed for a violation of the Sabbath recoverable before a justice, but there are in fact two remedies for such recovery. One is by warrant of arrest or a criminal prosecution; for the rule at common law is that where a statute gives a justice jurisdiction over an offence, it impliedly gives him power to apprehend any person charged with such offence. Bac. Abr., tit. Justices of Peace (E) 5. And the other is by a civil warrant. The latter remedy was pursued in the present case, the proceeding having been commenced by a summons, in the form of an ordinary warrant in civil cases, and not by warrant of arrest; so that much of the argument, as to the validity of a conviction in any criminal case where the right of a jury trial is denied the defendant, is not applicable to the case before us.

The warrant also sets forth, with technical precision, the charge upon which the proceeding was based; that is to say, that the defendant, on a certain Sabbath day, did labor at his trade and calling, as a retail merchant, etc., which was neither a work of necessity nor charity, etc., thus following the rule of pleading a statute, which is, that if there is an exception in the enacting clause, the party pleading must show that his adversary is not within the exception; but if there be an exception in a subsequent clause or section, or a subsequent statute, that is matter of defence, and is to be shown by the other party. 1 Chit. Pl., 223; 1 Bish. Crim. Pr., sec. 378. No point, however, is made upon the form of the warrant.

2. The case, therefore, was not only within the jurisdiction of the justice, but it was brought and conducted in strict con-

formity with the established rules of procedure in such cases, and hence the petitioner's secured ground of objection— namely, that the conviction is not warranted by the evidence— cannot be maintained. The writ of *habeas corpus* is not a writ of error. It deals, not with mere errors or irregularities, but only with such radical defects as render a proceeding absolutely void. It brings up the body of the prisoner with the cause of his commitment, and the court can inquire into the sufficiently of that cause; but if he be detained in prison by virtue of a judgment of a court of competent jurisdiction, that judgment is in itself sufficient cause. An imprisonment under a judgment cannot be unlawful unless that judgment be an absolute nullity, and it is not a nullity if the court or magistrate rendering it had jurisdiction to render it. *Ex parte Watkins*, 3 Pet., 193; *Ex parte Rollins*, 80 Va., 314.

The rule is very clearly stated in *Ex parte Parks*, 93 U. S., 18, as follows: "When the prisoner is in execution upon a conviction, the writ ought not to be issued, or, if issued, the prisoner should at once be remanded if the court below had jurisdiction of the offence, and did no act beyond the powers conferred upon it. The court will look into the proceedings so far as to determine this question. If it finds that the court below has transcended its powers, it will grant the writ and discharge the prisoner, even after judgment; but if the court had jurisdiction and power to convict and sentence, the writ cannot issue to correct a mere error." Citing *Ex parte Watkins, supra; Ex parte Kearney*, 7 Wheat., 38; *Ex parte Wells*, 18 How., 307; *Ex parte Lange*, 18 Wall., 163. See also *Ex parte Siebold*, 100 U. S., 371; *In re Ayers*, 123 *Id.*, 443, and cases cited.

We are not, therefore, to inquire in the present case as to the correctness of the conclusion drawn by the justice from the evidence before him. In other words, whether the defendant, in point of fact, carried on his business on a Sabbath day, as charged in the warrant, or what was his belief in respect to

the observance of a Sabbath, or whether, on any ground, his case came within the exception in the statute, were questions for the justice to pass upon, and hence are not to be re-examined here. The conviction is not void, and not being void, is conclusive in this collateral proceeding; and the rule which gives it this effect is, as was declared by Chief Justice Gibson in a *habeas corpus* case in the supreme court of Pennsylvania, absolutely necessary to prevent judicial proceedings from running into a state of incurable disorder. *Commonwealth* v. *Lecky*, 1 Watts., 66.

In the case of *Crepps* v. *Durden*, Cowp., 640, an action of trespass against a justice was maintained before Lord Mansfield on the ground that in the proceeding complained of—which was for an alleged violation of the Sabbath—the defendant had exceeded his jurisdiction; that is to say, he imposed several penalties upon the plaintiff for a violation of the statute on the same day, and this was held to be illegal. But the law is well settled that a conviction by a magistrate, who has jurisdiction over the subject matter, is conclusive evidence of the facts stated in it when collaterally assailed. 1 Smith's Lead. Cas., 1079, notes to *Crepps* v. *Durden*.

In *Cove* v. *Mountain*, 1 Man. & G., 257 (39 E. C. L., 432), the rule was declared to be this: "That if a magistrate commit a party charged before him in a case where he has no jurisdiction, he is liable to an action of trespass; but if the charge be of an offence over which, if the offence charged be true in fact, the magistrate has jurisdiction, the magistrate's jurisdiction cannot be made to depend upon the truth or falsehood of the facts, or upon the evidence being sufficient or insufficient to establish the *corpus delicti* brought under investigation."

The rule, as thus expressed, was quoted with approval by Lord Chief Justice Denman in the subsequent case of *Regina* v. *Bolton*, 1 Ad. & E. 66 (41 E. C. L. 439), whose language, in delivering judgment, is peculiarly appropriate to the present

case. He said: "The affidavits, being before us, were used on the argument, and much was said of the unreasonableness of the conclusion drawn by the magistrates, and of the hardship on the defendant if we would not review it, there being no appeal. We forbear to express any opinion on that which is not before us, namely, the propriety of the conclusion drawn from the evidence by the magistrates. They, and they alone, were the competent authority to draw it, and we must not constitute ourselves into a court of appeal where the statute does not make us such, because it has constituted no other." And to the same effect are numerous authorities.

Nor is the rule affected by that provision of the Code, relating to the writ of *habeas corpus*, contained in section 3035, to the effect that affidavits taken on reasonable notice may be read, in the discretion of the court or judge. The affidavits here referred to, are such as are introduced to show illegality, or something other than mere irregularity, in the detention of the prisoner. The legislature never intended to give authority to this or to any other court to review upon affidavits on *habeas corpus* the judgment of another court, for the purpose of correcting mere errors in that judgment. The solemn judgments of the courts of the commonwealth are not to be collaterally set at naught in that way; and a judgment of a justice of the peace, whose jurisdiction of the case appears, is as secure from collateral attack as is a judgment of a court of general jurisdiction. Both in this regard stand upon the same footing; the only difference being that in respect to the former, the jurisdiction must affirmatively appear, whereas in the latter case jurisdiction is presumed. *Freem. Judgm.*, sec. 524; *Hurd Hab. Corp.*, 367; *Comstock* v. *Crawford*, 3 Wall. 396.

3. We are of opinion, however, that the third point made by the petitioner is a good one; that is to say, the commitment is defective.

The Code provides that a defendant who is adjudged to pay a fine may be committed until the fine is paid, but prescribes

no particular term of imprisonment. The commitment, however, in the present case commands the petitioner to be kept in jail for a term of one year, unless the fine be sooner paid, etc. This was such a departure from the terms of the statute as to render the-commitment invalid. If it be suggested that a commitment for a year, unless the fine be sooner paid, is not less favorable to a defendant than a general commitment until payment be made, and is therefore not to his prejudice, the answer is, that the question is not to be determined with reference to any consideration of that sort, but according to the letter of the statute alone. See *Jones' case*, 20 Gratt., 848. The authority of the justice in such a case is derived exclusively from the statute, and must therefore be strictly pursued, else the commitment will not be valid. It is laid down in a work of high authority, that inasmuch as the power of a justice to convict an offender in a summary way without a trial by jury, is in restraint of the common law, the special power given by the statute must be strictly pursued, otherwise the common law will break in upon him, and level all his proceedings. 1 Burn's Justice, tit. Conviction. And the rule, of course, applies to the commitment. 6 Rob. Pr. 641.

The petitioner is, therefore, entitled to be discharged from custody under the commitment of the justice; but an order will be entered commanding the officer in whose custody he is, to again take him into custody, and forthwith carry him before the justice by whom he was committed, to be further dealt with according to law. Authority for such procedure, if authority were needed, may be found in Young's case, 1 Rob. Rep., 805.

It is proper, however, to add that we do not concur in the view urged by counsel for petitioner, that inasmuch as no provision is made for a jury trial before a justice of the peace, section 717 of the Code, authorizing a commitment for a fine imposed by a justice, is unconstitutional. The proceeding in

question, as already said, was in its nature not criminal, but civil. The commitment is not a part of the punishment annexed to the offence, but is a means provided for carrying the judgment into effect after *the trial* is over. And even if the nature of the proceeding were otherwise, the result would be the same. [The provision of the constitution relied on— namely, that "in all capital or criminal prosecutions a man hath a right * * to a speedy trial by an impartial jury," is not to be construed as extending, any more than restricting, the right of trial by jury as it existed at the time the constitution was adopted. It is the right as known and enjoyed by the people of the state at that time that is preserved and guaranteed by the constitution. And we know that Sabbath breaking, and a great variety of petty offences of the same class, were not only cognizable by a justice at the time our constitution was adopted, but for centuries before.]

Blackstone, whose commentaries were published before the revolution, and whose partiality for the common law system of trial by jury is displayed throughout his great work, devotes a whole chapter to the subject of summary convictions, in the course of which he says: "Another branch of summary proceedings is that before justices of the peace in order to inflict divers petty pecuniary mulcts and *corporal* penalties denounced by act of parliament for many disorderly offences, such as common swearing, drunkenness, vagrancy, idleness, and a vast variety of others, for which I must refer the student to the justice books formerly cited," etc. 4 Bl. Comm., 280. And in Burn's Justice, referred to by Blackstone, an almost infinite number of such offences are mentioned and forms given for their prosecution, among them being the offence of publicly crying, shewing forth, or exposing to sale any goods, wares, or merchandize (with certain exceptions) on the Lord's day, for which the offender, upon conviction before a justice, was required to pay a fine, and in default of such payment it was

directed by the statute that he be ordered to be publicly set in the stocks. 3 Burn's Justice, tit. Lord's Day. See, also, Bac. Abr., tit. Justices of Peace (E); Cooley Cons. Lim., 410, note; Proffat on Jury Trial, sec. 95.

Pomeroy, in his note to Sedgwick on the construction of statutory and constitutional law, at page 487, well says: "It is the right of trial by jury which exists and is preserved, and what that right is is a purely historical question, a fact to be ascertained like any other social, legal, or political fact. As a constitution speaks from the time of its adoption, the fact of the right to jury trial, which is ascertained to have existed at that time, must necessarily determine the meaning of the clause which recognizes and preserves that right."

The adjudged cases to the same effect are numerous and uniform. Many of them are collected by the learned annotator of the American decisions (Mr. Freeman) in his note to the case of *Flint River Steamboat Co.* v. *Roberts,* 48 Am. Dec., at page 186, to which we refer.

The subject was considered by the supreme court of the United States in the recent case of *Callan* v. *Wilson,* 127 U. S., 540, and while it was there held that the crime of conspiracy, such as was charged against the defendant in that case, was not of a class of petty or minor offences triable without a jury consistently with the constitution in the police court of Washington, in the District of Columbia, yet it was conceded, in the opinion of the court, that there is a class of minor offences which are so triable, and many of the cases so deciding were cited, including *Byers* v. *Commonwealth,* 42 Pa. St., 89, and *State* v. *Glenn,* 54 Md., 572.

It was also held in the same case that where a party is entitled to be tried by a jury at all, he is entitled to be so tried in the first instance, and that where this is denied, a statute giving a right of appeal to a higher court, in case of conviction, where the defendant is accorded a jury trial, does not

meet the requirements of the constitution. The question is an important one, and there are decisions the other way, but as it does not arise in the present case, we express no opinion upon it.

An order will be entered in conformity with this opinion.

Judgment reversed.