**HALL v. VERDEL et al.**

District Court, W. D. Virginia.

Sept. 6, 1941.

942

John D. Easley, of Lynchburg, Va., for petitioner.

F. S. Tavenner, Jr., U. S. Atty., of Woodstock, Va., for defendants.

PAUL, District Judge.

John Thomas Hall, at present a patient at the Veterans' Facility, a hospital maintained and operated by the United States Government in Roanoke County, Virginia, has filed a petition for a writ of habeas corpus seeking release from such institution on the ground that he is illegally detained therein.

It appears that the petitioner is a resident of Campbell County, Virginia, and that on November 2, 1938, he was adjudged insane and was committed to the care of the Veterans' Facility. The proceedings by which he was committed are those prescribed in section 1017 of the Code of Virginia, and § 1018, as amended by Acts 1936, c. 28, the former of which provides in substance that any circuit or corporation judge or any justice of the peace who suspects a person in his county or city to be insane or upon the written complaint of any reputable citizen shall issue a warrant ordering such person to be brought before him and shall summon two reputable physicians and that the judge or justice, together with the two physicians, shall constitute a commission to inquire whether such person be insane and a suitable subject for treatment or care in a hospital for the insane; that witnesses shall be summoned before such commission and that such commission by personal examination of such person and by inquiry of witnesses shall adjudge the mental condition of the person being examined. It is further provided in Section 1020 of the code that if it be adjudged that the person is insane and should be confined in the hospital, then the judge or justice shall issue an order directing commitment to such hospital.

By an act of the General Assembly of Virginia approved March 27, 1936, Acts 1936, c. 343, Section 1020 was amended to provide that in case the person adjudged to be insane is a veteran eligible for treatment in a Veterans' Facility, such person might be committed to such facility in lieu of one of the state hospitals for the insane.

It is further provided in Section 1029 of the Code of Virginia, as amended by Acts 1920, c. 164, that any person who is held in custody as insane may have the question of the legality of his detention and of his condition determined by filing a petition for a writ of habeas corpus in the circuit court of the county in which the hospital of his confinement is located and upon such petition and after notice to the authorities of the hospital, the judge of such circuit court shall upon a hearing determine whether such person is in fact insane.

The petition here filed alleges that on the 2nd day of November, 1938, the petitioner was brought before a commission composed of a justice of the peace of Campbell County and two physicians and that, as the result of his examination by said commission, he was committed as insane to the Veterans' Facility in Roanoke County, in which he has been since confined. The complaint of the petition is that the warrant against the petitioner issued and he was tried and committed all on the 2nd day of November, 1938; that he had committed no criminal offence and that there was no allegation that he was dangerously insane nor a menace to the safety of any other person; that he had no opportunity to be represented by counsel at the hearing before the commission and had no opportunity to present witnesses in his own behalf; or, in

other words, that he was summarily arrested, brought before the commission, adjudged insane and committed without any charge whatever against him other than he was "suspected" of being insane and without any opportunity on his part to present any evidence on his behalf refuting the charge of insanity.

The petition in this case is in general language. It would appear to seek a retrial of the question of the petitioner's sanity as provided in Section 1029, above referred to, but also and primarily it insists that the present detention of the petitioner is illegal in that the procedure under which he was committed was in violation of rights guaranteed to him by the Constitution of the United States, and particularly of articles V, VI and XIV of the amendments to said Constitution, in that he has been deprived of his liberty without due process of law.

The petition on its face is probably too indefinite and in too general language to permit action upon it, in that while it is alleged that the petitioner has been deprived of his liberty without due process of law, the respects in which due process of law were denied him have not been set forth with sufficient accuracy or detail. It sets forth mere conclusions of law rather than the facts on which the allegations are based. See Whitten v. Tomlinson, 160 U. S. 231, 242, 16 S.Ct. 297, 40 L.Ed. 406.

However, on a hearing on the petition, it is stated by counsel for the petitioner that it is not contended that the procedure whereby the petitioner was adjudged insane and committed did not conform to the provisions of sections 1017 and 1018 of the Code of Virginia. It is contended, however, that the procedure provided by the statute is in violation of the rights guaranteed to the petitioner under the Constitution of the United States in that it provides a procedure whereby this petitioner, or anyone else, can be adjudged insane and committed to a hospital and detained in custody without an opportunity to offer any adequate defense and without any real trial upon the issue of his insanity. This appearing to be the real ground upon which the allegation of the violation of petitioner's constitutional rights are based, it would be permissible to permit the petition to be amended to allege this fact more definitely, and the court has proceeded to consider the matter before it as if such amendment had been made.

■ The grounds upon which the jurisdiction of this court is sought are two, the first of these being the view that inasmuch as the petitioner is confined in a hospital maintained by the United States Government, from which release is sought, this court has jurisdiction of the matter. However, when the State of Virginia, by the act of March 27, 1936, pursuant to some arrangements with the Veterans' Facility, authorized the commitment of insane veterans to the Veterans' Facility, it is my opinion that the Veterans' Facility thereby became an agent of the State of Virginia for the holding of such insane persons for care and treatment; that the Veterans' Facility, so far as relates to persons committed to it by the state courts of Virginia, stands in the same position as if it were a state institution, and the fact that it happens to be supported and maintained by the United States Government is not material.

■ But even if the State of Virginia had not by an arrangement with the Veterans' Facility constituted the latter its agent for the care of insane veterans, the state courts would not necessarily be precluded from inquiring into the detention of a person held in custody in the Veterans' Facility or by any other officer or institution of the United States. In Ableman v. Booth, 21 How. 506, 523, 16 L.Ed. 169, it is pointed out that any state court or judge authorized by the laws of the state to issue the writ of habeas corpus may issue it in any case where the party is imprisoned within the territorial limits of that state provided it does not appear when the application is made that the person imprisoned is in custody under the authority of the United States. It is true that if upon a return of the writ it appears that the person is held in custody under authority of the United States, the state court can proceed no further. But where it appears, as it does in the instant case, that the petitioner was committed to custody by a tribunal constituted under the laws of the State of Virginia and in pursuance of the laws of the state, there is nothing to bar the jurisdiction of the state court to grant the writ. The place of detention is not determinative, but the source of the authority under which the detention occurs.

■ The other ground of jurisdiction is that petitioner was denied rights guaranteed to him by the Constitution of the United States, in that the statute under which his adjudication and commitment took place

deprives him of rights guaranteed by the Constitution of the United States. Undoubtedly the deprivation of a right guaranteed by the Constitution of the United States furnishes this court with jurisdiction, but there still arises the question of whether or not that jurisdiction should be exercised to grant the relief prayed for in the petition. In short, this court is asked to grant this writ of habeas corpus for the purposes of deciding whether or not the statute of Virginia under which this petitioner was examined, adjudicated insane and committed to a hospital constitutes a procedure in violation of the Constitution of the United States in that it deprived the petitioner of his liberty without due process of law.

The statute which is thus attacked has been in force for many years. For at least seventy years, and probably longer, the provisions of the Virginia statute for inquiry into the sanity of suspected persons, determination of the question of sanity and commitments to hospitals for the insane have been substantially as they occur in the present statute, with some amendments made from time to time providing for a greater participation in the inquiry of members of the medical profession. After all these years, this court is now asked to hold that persons dealt with in accordance with this statute have been dealt with in violation of their rights under the Constitution of the United States. It does not appear that the statute has ever been previously so attacked in the courts of the State of Virginia, nor does it appear that this petitioner has ever instituted proceedings in the state courts based upon the contentions which he is now making. It is alleged in a motion filed by the defendants to dismiss the petition that during the year 1940 this petitioner sought to have his sanity tested or retried by a petition for a writ of habeas corpus filed in the Circuit Court of Roanoke County, as provided in Section 1029 of the code, and that, as a result thereof, it was held that the petitioner was not illegally confined or restrained. Inasmuch as under that procedure the court would appear to be confined to a determination of the question of sanity, this previous decision of the Circuit Court of Roanoke County had the effect of determining only that the petitioner was in fact insane.

■ It may be here said that this court has little doubt that it has no jurisdiction to grant a writ of habeas corpus directed solely to the purposes set out in Section 1029 of the Virginia Code, namely, a trial of the question of sanity. A writ of habeas corpus for this purpose alone would not involve any question conferring jurisdiction on this court. This is simply a method prescribed by the Virginia statute whereby the sanity of a person may be retried at anytime and involves no question of the legality of the procedure under which the patient was committed. Therefore, in order to give this court jurisdiction, there must be raised some question involving a violation of the Constitution or laws of the United States emanating in the statute or in the application of the statute under which the petitioner was committed.

■ It does not appear that this petitioner has ever resorted to the state courts to question the validity of the statute under which he was adjudged insane and was committed or the regularity and consequent validity of the procedure adopted in his particular case. That he has abundant opportunity to do this there can be no question. The fact that Section 1029 of the Code of Virginia permits the use of the writ of habeas corpus as a method for trying the sanity of the petitioner does not preclude the use of the same writ for an attack upon the validity of the statute or the validity of the procedure under which he was committed. Section 1029 merely authorizes the use of the writ of habeas corpus for a particular purpose designated therein, but does not prohibit its use for the various other causes in which it has been traditionally exercised.

■ The writ of habeas corpus is of ancient origin and well known in the common law. It has been preserved in all of its virility in the law of Virginia. Section 5848 of the Virginia Code provides: "The writ of habeas corpus ad subjiciendum shall be granted forthwith by any circuit court or corporation court, or any judge of either in vacation, to any person who shall apply for the same by petition, showing by affidavits or other evidence probable cause to believe that he is detained without lawful authority. (Code 1887, § 3029; 1902-3-4, p. 576.)"

Section 88 of the Constitution of Virginia confers upon the Supreme Court of Appeals of the State of Virginia original jurisdiction in cases of habeas corpus. And while it was held in the case of Prison Association v. Ashby, 93 Va. 667, 25 S.E. 893, that this constitutional provision does not proprio vigore confer jurisdiction on the

appellate courts in such cases and merely invested the court with capacity to receive original jurisdiction in case the Legislature should see fit to so provide, it appears that the Legislature has so provided by Section 5865 of the Code of Virginia, which provides that the Supreme Court of Appeals shall have jurisdiction to award writs of habeas corpus. While the Supreme Court of Appeals now has original jurisdiction to award the writ of habeas corpus, this does not mean exclusive jurisdiction; and I take it from the statutory provisions above quoted that the situation in Virginia at present is that any circuit or corporation court has the power to issue the writ of habeas corpus and that an appeal lies from the decision of that court; and that in addition to this application may be made to the Supreme Court of Appeals as a court of original jurisdiction in such cases. There would, therefore, seem to be abundant opportunity for the petitioner here, or any other person claiming to be illegally held in custody, to have that question tried in the Virginia courts. As a matter of fact, it has been repeatedly so tried. See Ex parte Rollins, 80 Va. 314, where the petitioner was discharged from the custody of arrest under an unconstitutional statute. In Lacey v. Palmer, 93 Va. 159, 24 S.E. 930, 31 L.R.A. 822, 57 Am.St.Rep. 795, the petitioner was discharged from arrest under a void warrant. Both of these appear to be cases in which the writ was originally sued out before the Supreme Court. Dulin v. Lillard, Sheriff, 91 Va. 718, 20 S.E. 821, was a case where a petitioner sought release from alleged illegal custody by a writ of habeas corpus in the circuit court and in which the writ being refused he obtained a writ of error to the Supreme Court of Appeals.

And the case of Mallory v. Virginia Colony for Feeble-Minded, 123 Va. 205, 96 S.E. 172, is one closely analogous to the one here. In that case the Supreme Court of Virginia granted habeas corpus to release from custody a feeble-minded person committed to that institution, on the ground that his constitutional rights had not been protected in the procedure attending his commitment. The only difference between that case and the instant one is that in the former it was held that a disregard of the provisions of the statute rendered the procedure void, while here the attack is made on the statute itself.

Even if this court has jurisdiction to grant the writ based on the alleged violation of rights guaranteed to the petitioner by the Constitution of the United States, it does not necessarily follow that the court should do so; and the expression of the federal courts is generally to the effect that they should not intervene by habeas corpus where the petitioner has made no attempt to protect his rights by resort to the state courts. The state courts have the power to determine cases arising under the Constitution and laws of the United States or involving rights dependent upon such Constitution or laws. As said in Robb v. Connolly, 111 U.S. 624, 637, 4 S.Ct. 544, 551, 28 L.Ed. 542:

"Upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce, and protect every right granted or secured by the constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them; for the judges of the state courts are required to take an oath to support that constitution, and they are bound by it, and the laws of the United States made in pursuance thereof, and all treaties made under their authority, as the supreme law of the land, 'anything in the constitution or laws of any state to the contrary notwithstanding.' If they fail therein, and withhold or deny rights, privileges, or immunities secured by the constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the state in which the question could be decided, to this court for final and conclusive determination.

"The recognition, therefore, of the authority of a state court, or of one of its judges, upon a writ of habeas corpus, to pass upon the legality of the imprisonment, within the territory of that state, of a person held in custody,—otherwise than under the judgment or orders of the judicial tribunals of the United States, or by the order of a commissioner of a circuit court, or by officers of the United States acting under their laws,—cannot be denied merely because the proceedings involve the determination of rights, privileges, or immunities derived from the nation, or require a construction of the constitution and laws of the United States."

And again in the same case, on page 639 of 111 U.S., on page 552 of 4 S.Ct., 28 L.

Ed. 542: "Subject, then, to the exclusive and paramount authority of the national government, by its own judicial tribunals, to determine whether persons held in custody by authority of the courts of the United States, or by the commissioners of such courts, or by officers of the general government, acting under its laws, are so held in conformity with law, the states have the right, by their own courts or by the judges thereof, to inquire into the grounds upon which any person, within their respective territorial limits, is restrained of his liberty, and to discharge him, if it be ascertained that such restraint is illegal; and this, notwithstanding such illegality may arise from a violation of the Constitution or laws of the United States."

The case of Shapley v. Cohoon, D.C., Mass., 258 F. 752, 755, involved a case very similar to the instant one, wherein the petitioner had been committed to a hospital for the insane under a procedure apparently quite similar to that utilized in Virginia. An application was made to the federal court for a writ of habeas corpus on the ground that the petitioner was detained in violation of rights guaranteed under the Constitution of the United States. In dismissing the petition, the court pointed out that it had undoubted jurisdiction upon a writ of habeas corpus to discharge from the custody of state officers one restrained of his liberty in violation of the Constitution of the United States but emphasized that there was a discretion as to the time and mode in which this power should be exercised. The court said in part:

"The state alone, as parens patriae is charged with the duty of caring for the insane within its borders, and may adopt whatever method of procedure it may desire for inquisition into their condition and the necessity for their confinement, provided the same is not in contravention of the Constitution or laws of the United States. In re Dowdell, 169 Mass. 387, 47 N.E. 1033, 61 Am.St.Rep. 290, the Supreme Judicial Court of Massachusetts has sustained the constitutionality of its law for the commitment of insane persons, and in view of the confusion that might arise from a contrary decision by a federal court, while I think the Massachusetts statute ought to provide for notice and an opportunity to be heard before commitment of the insane is ordered, I think it would be unwise for a federal court now to advance any different view.

"For the welfare of the community, as well as that of the insane, and to guard against unnecessary conflicts between the federal courts and those of the state, both of which are equally bound to guard and protect rights secured by the Constitution, it is necessary that one who alleges that he has been deprived of his liberty in violation of his constitutional rights should have exhausted all his remedies in the state court before application should be made to a federal court."

See also In re Huse, 9 Cir., 79 F. 305; Sylvester v. Keeler, D.C.Mass., 290 F. 969; United States ex rel. Grove v. Jackson, D. C.Pa., 16 F.Supp. 126; Hall v. People of California, 9 Cir., 79 F.2d 132.

In the last named case, in which petitioner alleged that his detention was in violation of the Constitution and laws of the United States, the court says: "From the petition itself it affirmatively appears that appellant has not applied to any court of the state of California for a writ of habeas corpus. Such a writ is available in that state. Constitution of California, art. 1, § 5; article 6, § 4. Orderly procedure requires that, before a federal court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy is afforded by the state."

In the case of Mooney v. Holohan, 294 U.S. 103, 55 S.Ct. 340, 79 L.Ed. 791, 98 A. L.R. 406, the petitioner, seeking an original writ of habeas corpus from the Supreme Court of the United States, alleged that he was held in custody by the state of California without due process of law in violation of the Fourteenth Amendment of the Constitution of the United States. The court, after pointing out that there was no sufficient showing that there was no corrective process available in the state courts and noting that the writ of habeas corpus is available in California, concludes, on page 115 of 294 U.S., on page 343 of 55 S. Ct., 79 L.Ed. 791, 98 A.L.R. 406: "We do not find that petitioner has applied to the state court for a writ of habeas corpus upon the grounds stated in his petition here. That corrective judicial process has not been invoked, and it is not shown to be unavailable. Despite the many proceedings taken on behalf of the petitioner, an application for the prerogative writ now asserted to be peculiarly suited to the circumstances disclosed by his petition has not been made to the state court. Orderly pro-

cedure, governed by principles we have repeatedly announced, requires that before this Court is asked to issue a writ of habeas corpus, in the case of a person held under a state commitment, recourse should be had to whatever judicial remedy afforded by the state may still remain open."

The federal courts are not eager or quick to interfere with state proceedings. The disposition and care of insane persons is peculiarly one within the function of the state, to be determined by the state in due regard to the safety of the public and to the sympathetic and humane treatment of its own unfortunate citizens. This court should not, merely because it may have the power to do so, interfere with the disposition which the state has considerately determined as necessary or wise in the care of its insane. While federal courts cannot discard or refuse to assume the responsibility that rests on them for the protection of rights guaranteed by the Federal Constitution in cases where these rights cannot otherwise be protected, every consideration of comity and propriety demands that in cases of this sort recourse should first be had to the state courts whose equal duty it is to furnish that protection and which have a primary concern with the subject matter of this petition.

This court will, for the reasons given, have to decline jurisdiction and dismiss the petition.