# CIRCUIT COURT OF THE CITY OF NORFOLK

Danial J. Williams

    v.

Helen Fahey,
Chairman of the
Virginia Parole Board

           Case No. (Civil) CL10-4331

Joseph J. Dick

    v.

Helen Fahey,
Chairman of the
Virginia Parole Board

           Case No. (Civil) CL10-5111

Eric C. Wilson

    v.

W. Steven Flaherty,
Superintendent of the
Virginia State Police

           Case No. (Civil) CL10-5741

           February 2, 2011

BY JUDGE EVERETT A. MARTIN, JR.

It is appropriate to state at the outset what I am *not* deciding. I am not deciding whether the petitioners are guilty or innocent of the rape and murder of Michelle Moore-Bosko or, in the case of Mr. Wilson, her rape. I am not deciding whether a jury would convict or acquit the petitioners

of those charges were they to be re-tried today. I am not deciding whether their confessions were voluntary or coerced. I am *only* deciding if they have timely filed their petitions for writs of *habeas corpus*. I find they have not done so.

### The Suspension Clause

The petitioners claim the Suspension Clause of the Constitution of Virginia, Art. I, § 9, cl. 2, requires an exception to Code of Virginia § 8.01-654(A)(2) for claims based on newly discovered evidence that could not have been obtained through reasonable diligence within the limitations period. That clause provides "that the privilege of the writ of *habeas corpus* shall not be suspended unless when, in cases of invasion or rebellion the public safety may require." The Supreme Court of Virginia has twice declined to decide the issue. *Haas v. Lee*, 263 Va. 273, 560 S.E.2d 256 (2002); *Hines v. Kuplinski*, 267 Va. 1, 591 S.E.2d 692 (2004).

In *Boyce v. Braxton*, No. CR70H34158 (Circuit Court of Newport News, Jan. 30, 2006), Judge Tench held that "for newly discovered evidence, such an exception must be read into the statute lest the statute of limitations operate in violation of the Suspension Clause. . . ." The petitioners claim Judge Doyle, who was later designated to hear *Boyce*, also adopted this rationale. Judge Doyle only denied a motion to reconsider the ruling. He may have agreed with the ruling or, as a prudent trial judge, he may simply have declined to revisit a decision made in the case almost four years earlier. From a review of a transcript of a hearing before Judge Doyle, Exh. R2 to respondent's Reply to Opposition in Williams's case, the latter appears more likely.

I also conclude I need not reach the issue, but I have doubts about the ruling in *Boyce*. The present version of Virginia's Suspension Clause is almost identical to that of the federal constitution; "rebellion" and "invasion" are transposed and "it" is omitted at the end. It first appeared in the Constitution of 1869, Art. V, § 14. The use of the writ in post-conviction proceedings in the federal courts was then quite limited. The court inquired if the trial court had jurisdiction over the prisoner and the offense of which he was convicted and if the offense was one for which a person could be confined. If these inquiries were answered in the affirmative, the writ was denied unless the action of the trial court was otherwise void, as, for example, punishing a person twice for the same crime. *Ex parte Kearney*, 20 U.S. (7 Wheat.) 38 (1822); *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1874); *Ex parte Parks*, 93 U.S. 18 (1876). In 1867, Congress expanded the scope of the federal writ to "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty of law of the United States." This was not held applicable to state court convictions

until "well into" the twentieth century. *Felkner v. Turpin*, 518 U.S. 651, 663 (1998).

In the years following 1869, the use of the writ was similarly quite limited in post-conviction proceedings in Virginia. If a person was detained by virtue of a judgment of a court of competent jurisdiction, his imprisonment was not unlawful, *Ex parte Marx*, 86 Va. 40, 44, 9 S.E. 475, 477 (1889), unless, for example, he was confined for a cause for which a man ought not to be imprisoned pursuant to an unconstitutional statute or the proceeding that detained him was void. *Ex parte Rollins*, 80 Va. 314, 316-37 (1885).

In its opinion in *Parks*, the Supreme Court cited several English authorities on the limits on the use of the writ in post-conviction proceedings and stated:

> The general principles upon which the writ of *habeas corpus* is issued in England were well settled by usage and statutes long before the period of our national independence, and must have been in the mind of Congress when the power to issue the writ was given to the courts and judges of the United States. These principles, subject to the limitations imposed by the Federal Constitution and laws, are to be referred to for our guidance on the subject.

93 U.S. at 21. Perhaps these decisions and principles should also be referred to in deciding what Virginia's Suspension Clause protects.

Most courts have upheld statutes of limitations on the filing of petitions for writs of *habeas corpus* and for a sound reason. The use of the writ in post-conviction proceedings today is much changed from 1787 or 1869. See *Felkner v. Turpin, supra*. The late Justice Powell referred to the then present use of federal *habeas corpus* as "a revisionist concept . . . that bears little or no relationship to the historic purpose and function of the Great Writ." Remarks on the 200th Anniversary of the Establishment of the Supreme Court of Virginia, 220 Va. at xvii (Aug. 30, 1979). The writ is rarely used today to challenge a trial court's jurisdiction. Allegations of ineffective assistance of counsel or police or prosecutorial misconduct are far more common. The statute of limitations was probably not enacted to suspend the writ, but to reduce prisoner litigation and to try to bring finality to criminal convictions, a finality that has been undermined by the contemporary use of the writ.

Even if I accept the ruling in *Boyce*, the petitions are untimely. As I stated in my letter of September 15, 2010, to Mr. Allen and Ms. Theisen copies of which I enclose for Ms. Worthington and Mr. Northup, Williams's petition was not filed within a "reasonable time" (what Judge Tench held

to be the necessary extension of the statute of limitations, and in *Boyce* it was one year) after the discovery of the claims. Derek Tice's attorneys were able to investigate, prepare a petition and a 79-page memorandum in support of the petition, and file it on September 14, 2005, four years and nine months before Williams filed his petition, four years and ten months before Dick filed his, and almost five years before Wilson filed.

### *Williams's Motion To Reconsider the Order of December 17*

I struck paragraphs 8 through 16 of Mr. Saltzman's affidavit by the order objected to. I struck paragraphs 8 through 13 because they were hearsay. I struck paragraphs 14 and 15 because they were completely redacted. Neither respondent nor I know their content. However, by that same order, I allowed Williams to file exhibits and other affidavits based on the personal knowledge of the affiant. He has now submitted an affidavit of B. Frank Stokes and another affidavit of Mr. Saltzman. In their affidavits, Mr. Stokes and Mr. Saltzman state that a number of witnesses are reluctant to provide information from fear of retaliation or prosecution and that the Norfolk Police Department will not cooperate with them.

Williams filed his Petition on June 29, 2010. The respondent filed her Motion to Dismiss on September 7. Williams has had almost five months to assemble the information he wishes me to consider in opposition to the Motion to Dismiss. The motion to reconsider is denied, however, I will reinstate paragraph 16 of Mr. Saltzman's affidavit.

### *Danial J. Williams's Petition*

I have now read again Williams's Petition and respondent's Motion to Dismiss, and I have also reviewed his Opposition to respondent's Motion to Dismiss, the respondent's Reply to Opposition, his Supplement, and the respondent's Reply to his Supplement. Nothing in Williams's Opposition or Supplement causes me to change the opinion I expressed in my letter of September 15, except I note that the first sentence of claim (i) of the Petition does indeed pertain to Williams, but he can hardly claim he first learned his confession was coerced and false after Detective Ford was indicted. He filed a motion to suppress his confession, which Judge Poston denied on November 17, 1997. Motion to Dismiss, Exh. E.

I should also comment on claims (g) and (m) of his Petition, which I omitted from my earlier letter. Claim (g) alleges Ford materially altered a confession in an unrelated case. Even if true, this did not violate Williams's rights, and the Petition itself alleges this was known in 1995. Claim (m) relates to Tamika Taylor's identification of Omar Ballard as a suspect on the day Mrs. Moore-Bosko's body was discovered. That had been known long before Ford's indictment. See *Tice v. Johnson*, CL05-2067, Petition

for Writ of Habeas Corpus, C, 14, a (ii), p. 4 and Memorandum, p. 2, both filed in this court on September 14, 2005.

In his Opposition, Williams alleges no previously unknown misdeeds by Ford. He alleges only a different state of mind and an additional motive for previously alleged misdeeds. Williams alleges Ford knew he was innocent and that he pursued the charges to avoid damage to his reputation, "a reputation that he traded on to profit illegally in a long-running extortion scheme." Opposition at p. 3. As I read his Petition and Opposition, this is the extent of the new matter alleged.

In Derek Tice's Memorandum in support of his petition for a writ of *habeas corpus, supra*, he alleged at page 4:

> Rather than acknowledge that the physical evidence and DNA results belied Williams's involvement in the crime, Ford refused to even question the validity of Williams's confession, likely because he did not want to suffer the public humiliation from having extracted yet another false confession. Instead, Ford became dead set on proving Williams's involvement at any cost, even if it meant destroying more innocent lives.

I am not persuaded that an allegation Ford "knew" Williams was innocent (it would actually be a "belief" as Ford was not present at the commission of the crimes) as opposed to an allegation Ford recklessly disregarded exculpatory evidence and became intent on proving Williams's guilt constitutes a new *habeas corpus* claim in the absence of some other misconduct.

Ford's *modus operandi* as alleged in the federal indictment is wholly dissimilar to Williams's allegations in his Petition about Ford's role in his case. There was no allegation in Ford's indictment that he took money to secure false confessions from the petitioners or anyone else, to influence petitioners' cases or any other homicide case he investigated, or to fabricate or destroy evidence in the petitioners' cases. I find there is nothing alleged in the Petition, which is Williams's pleading, that was not previously alleged by Derek Tice or known years ago. Ford's sentencing, and whatever effect it may have on the willingness of witnesses to testify, will have no effect on what Williams has pleaded in his Petition. I see no good reason to further delay ruling on respondent's pending motion. I grant the Motion to Dismiss on the plea of the statute of limitations for the reasons stated in my letter of September 15, in this letter, and in the Motion to Dismiss.

### Joseph J. Dick's Petition

I have read the Petition, the Motion to Dismiss, and the Opposition to the Motion to Dismiss. Dick pleaded guilty to first-degree murder and

rape. The court entered his sentencing order on September 22, 1999. He did not appeal. Thus under Code of Virginia § 8.01-654(A)(2), Dick had until September 24, 2001, to file his Petition, as September 22, 2001, was a Saturday. Code of Virginia, § 1-210(C). He filed his Petition on August 3, 2010.

Dick's claims are indistinguishable from those of Williams. His claim (a) is similar to Williams's claim (a). His claim (a) does not contain the sentence from Williams's claim (a) I emphasized in my letter of September 15, although Dick makes a similar claim in paragraph 17 of his Petition. His claims (b), (c), and (d) relate to Ford's indictment and are the same as Williams's claim (b). His claim (e) is Williams's claim (c). His claim (f) is Williams's claim (d). His claims (g) and (h) are contained in Williams's claims (i) and (j). His claim (j) alleges violations of the rights of co-defendants, not his own rights, and are contained in Williams's claims (k) and (l). In claim (k) he again alleges Ford knew he was innocent, which he also alleged in claim (e). His claim (l) is a more concise restatement of claims (a) and (e).

Unlike Williams, however, Dick does have standing to assert in claim (i) that Ford arranged for a "snitch" to be placed in his cell. However, this was known in January of 1999 at a hearing before Judge Poston in *Commonwealth v. Eric Wilson*, CR98-2484. Motion to Dismiss, Exh. H. Ford's indictment had nothing to do with Dick's ability to discover this.

I grant the Motion to Dismiss on the plea of the statute of limitations for the reasons stated herein and in the Motion to Dismiss.

### Eric C. Wilson's Petition

I have read the Petition, the Motion to Dismiss, and the Opposition to the Motion to Dismiss. Wilson pleaded not guilty and was tried by jury. The jury convicted him of rape and acquitted him of murder. The court sentenced him by order entered on September 21, 1999. The Court of Appeals denied his petition for appeal by order of March 8, 2000. No further appeal was sought. Thus under Code of Virginia § 8.01-654(A)(2), Wilson had until September 21, 2001, to file his Petition. He filed it on September 1, 2010.

Unlike Williams and Dick, Wilson served his sentence and is not on probation or parole. He is, however, required to register as a sexual offender, and, for this reason, he claims he is in custody.

Claims (a)-(i) of Wilson's petition are almost verbatim copies of claims (a)-(i) of Dick's petition. Claims (j)-(n) have nothing whatsoever to do with Ford's indictment or conviction. Claim (k) and most of claim (l) have nothing to do with Wilson.

Claim (j) states that Ford "coerced a false and involuntary 'confession' from him." Wilson sought to have Judge Poston suppress his confession. He failed. He testified before the jury that his confession was

not voluntary. Motion to Dismiss, Exh. E. They convicted him. He appealed that issue to the Court of Appeals. Motion to Dismiss, Exh. C, pp. 2-3. He lost. His allegation that he could not have known of this claim until Ford's indictment (see claim (e)) is preposterous.

I grant the Motion to Dismiss on the plea of the statute of limitations for the reasons stated herein and in the Motion to Dismiss. I thus need not decide if being required to register as a sex offender constitutes "custody" for purposes of *habeas corpus*.

### Motions for Leave To Conduct Discovery

Each petitioner has filed a discovery motion. As I have granted the respondents' Motions to Dismiss, I deny the discovery motions.

Many are aggrieved by the acts for which Ford was convicted: the residents of Norfolk he swore to protect and serve, the victims of the crimes the prosecution of which he corruptly influenced, the police officers who investigated those crimes, and the prosecutors and judges he deceived. Nothing the petitioners have offered indicates there is any connection whatsoever between their prosecutions and Ford's corrupt acts. Nothing they have offered shows that their claims were unknown until Ford's indictment. Instead, the record irrefutably shows their claims were known years ago.