# CIRCUIT COURT OF THE CITY OF NORFOLK

Arsean L. Hicks

v.

Harold W. Clarke,
director

October 23, 2013

Case No. (Civil) CL13-5688

By Judge Everett A. Martin, Jr.

I have reviewed the petition for a writ of habeas corpus, the motion to dismiss, and the prisoner's reply, in the preparation of which he seems to have had assistance of counsel. I grant the motion to dismiss for the reasons stated in paragraphs 1-12 thereof and herein.

The prisoner alleges the Commonwealth failed to disclose exculpatory evidence and that he did not learn of the evidence until October 8, 2012. He argues that to apply the one year limitation of Code of Virginia § 8.01-654(A)(2) would violate the Suspension Clause of Article I, § 9, of the Constitution of Virginia, which provides "that the privilege of the writ of habeas corpus shall not be suspended unless when, in cases of invasion or rebellion, the public safety may require." The present version of Virginia's Suspension Clause is almost identical to that of the federal constitution. It first appeared in the Virginia Constitution of 1869, Art. V, § 14.

As the respondent has not controverted the facts the petitioner alleges, I am compelled to address the legal question.

Dr. Johnson defined "suspend" as "to interrupt; to make to stop for a time." *A Dictionary of the English Language* (1755). Noah Webster gave one definition of the word with reference to the federal constitution: "[t]o cause to cease for a time from operation or effect; as to suspend the habeas corpus act." *American Dictionary of the English Language* (1828). What would a suspension of the writ have looked like in 1787? This was probably what the Suspension Clause was understood to protect us against.

Parliament passed several suspending acts in times of crisis between 1689 and 1783. These acts operated as suspensions for a specified period of time (never longer than one year unless extended by a subsequent act) of the rights to bail and a speedy trial for certain enumerated offenses,

usually treason, suspicion of treason, or "treasonable practices." It seems the term "habeas corpus" did not appear in any of the acts. Only certain designated high officers of state could imprison without judicial review under the acts. The right to the writ, bail, and a speedy trial in all other cases remained unaffected. 10 *Halsbury's Laws of England* 44 (1st ed. 1909); R. J. Sharpe, *The Law of Habeas Corpus* 94-95 (2d ed. 1989); Amanda Tyler, *The Forgotten Core Meaning of the Suspension Clause*, 125 Harvard Law Review 901, 934-51 (2012); Paul D. Halliday and G. Edward White, *The Suspension Clause: English Text, Imperial Contexts, and American Implications*, 94 Virginia Law Review 575, 613-23 (2008). The Virginia General Assembly passed such an act in May of 1781. It authorized the Governor, with the advice of the privy council, to deny bail, mainprize, or habeas corpus to any person suspected of "disaffection to the independence of the United States or of attachment to their enemies." The act expired at the end of the next session of the General Assembly, which was held that November. 10 *Hening's Statutes at Large* 413-16. The suspension acts thus suspended *pre-trial* rights, which were the principal protections of the writ at the time in criminal cases.

The General Assembly could certainly pass a suspension act differing from those of the seventeenth and eighteenth centuries. It could have a longer duration. It could apply to a broader class of offenses or all offenses. It could authorize a broader class of officers to arrest without judicial review.

The statute in question simply does not "suspend" the writ of habeas corpus. It has been in effect since 1998. 1998 Acts of Assembly, c. 577. It has no expiration date. It does not give the Governor or any of his officers the authority to detain without judicial review. The writ is available to any prisoner regardless of the offense of which he was convicted. The statute complained of merely sets a deadline beyond which the writ cannot be sought in a *post-conviction* proceeding.

The writ is rarely used today for its original purposes in criminal cases. Those protections are provided by other statutes. There are magistrates throughout Virginia. Va. Code § 19.2-33 *et seq.* A person arrested on a warrant shall be taken before a judicial officer "without unnecessary delay" for a bail hearing. Va. Code § 19.2-80. A person arrested without a warrant shall be "brought forthwith" before a magistrate for a determination whether probable cause exists, and, if a warrant is issued, the magistrate shall determine bail. Va. Code § 19.2-82. An accused who is denied bail or complains of its terms may appeal to the next higher court, up to the Supreme Court of Virginia. Va. Code § 19.2-124. A warrant is required to "describe the offense charged with reasonable certainty." Va. Code § 19.2-72. An accused in jail is to be discharged if not indicted by the end of the second term of court, with exceptions, and he is to be tried within a fixed period of time. Va. Code §§ 19.2-242, 19.2-243.

The prisoner has cited my opinion in *Williams v. Fahey*, 81 Va. Cir. 204 (2010), in support of his petition, asking what I would do when, as here, a prisoner discovers allegedly exculpatory evidence after the statute of limitations has run. I shall cite from my second opinion in that case where I discussed the use of the writ in post-conviction proceedings in 1869:

> The use of the writ in post-conviction proceedings in the federal courts was then quite limited. The court inquired if the trial court had jurisdiction over the prisoner and the offense of which he was convicted and if the offense was one for which a person could be confined. If these inquiries were answered in the affirmative, the writ was denied unless the action of the trial court was otherwise void, as, for example, punishing a person twice for the same crime. *Ex parte Kearney*, 20 U.S. (7 Wheat.) 38 (1822); *Ex parte Lange*, 85 U.S. (18 Wall.) 163 (1874); *Ex parte Parks*, 93 U.S. 18 (1876).
>
> In the years following 1869, the use of the writ was similarly quite limited in post-conviction proceedings in Virginia. If a person was detained by virtue of a judgment of a court of competent jurisdiction his imprisonment was not unlawful, *Ex parte Marx*, 86 Va. 40, 44, 9 S.E. 475, 477 (1889), unless, for example, he was confined for a cause for which a man ought not to be imprisoned, pursuant to an unconstitutional statute, or the proceeding that detained him was void. *Ex parte Rollins*, 80 Va. 314, 316-17 (1885).

*Williams v. Fahey*, 82 Va. Cir. 178, 179 (2011). The Supreme Court restated this original limitation on the use of the writ in post-conviction proceedings in *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1975). However, with the increasing frequency of allegations of ineffective assistance of counsel and police or prosecutorial misconduct, evidence outside the record must more often be adduced. When evidence must be adduced, the immemorial problems of fleeting memory, dead and missing witnesses, and lost records arise, and, also, the reason for a statute of limitations. The Supreme Court recognized this in applying the doctrine of laches to habeas corpus proceedings in *Walker v. Mitchell*, 224 Va. 568, 299 S.E.2d 698 (1983). Furthermore, the General Assembly may have enacted this statute of limitations to reduce prisoner litigation and to attempt to bring finality to criminal convictions, a finality that has been undermined by the contemporary use of the writ.

In sum, Va. Code § 8.01-654(A)(2) is not a suspension act, and the prisoner's use of the writ here is not a use recognized when Virginia adopted the Suspension Clause.

The prisoner has two remedies under Virginia law. He may pursue a Writ of Actual Innocence in the Court of Appeals. Va. Code § 19.2-327.10. He may seek clemency from the Governor. Constitution of Virginia, Art. V, § 12. He may not seek a writ of habeas corpus.